983 P.2d 245

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kerry Stephen THOMAS, Defendant–Appellant.**

**No. 23905.**

Court of Appeals of Idaho.

July 26, 1999.

Alan E. Trimming, Ada County Public Defender, Edward B. Odessey, Deputy Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kimberly A. Coster, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, J.

A jury found Kerry Stephen Thomas guilty of transferring body fluid which may contain the HIV virus, a felony, in violation of I.C. § 39–608. The court sentenced Thomas to serve a unified fifteen-year sentence, with seven years fixed. On appeal, Thomas argues that the evidence presented at trial was insufficient to support the jury's verdict and

that the court abused its discretion in imposing an excessive sentence. For the reasons stated below, we affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On the evening of April 24, 1996, Kerry Thomas and C.G. met for the first time at a bar in Boise. Male by birth, C.G. described himself as a preoperative transsexual, C.G. had assumed a female identity for most of his adult life and dressed as a woman at all times, including the evening that he met Thomas. Thomas and C.G. discussed a number of topics that evening, including C. G.'s transsexuality, and left the club together. Thomas and C.G. drove to C. G.'s apartment, went upstairs to C. G.'s bedroom and closed the door. C.G. testified that he had consumed approximately four to five beers and two rum and cokes that evening.

According to C. G.'s testimony, after some kissing, C.G. and Thomas engaged in both oral and anal sex, although Thomas did not ejaculate.[1] At the time of the encounter, Thomas was HIV positive and had been aware of his HIV status at least since 1990. However, Thomas did not disclose his HIV status to C.G. before their sexual encounter.

C. G.'s roommate, R. E., and C. G.'s friend, G. H., had also been at the same bar that evening, G.H. was staying with C. G., sleeping on the couch downstairs, until he could get a place of his own. R.E. testified that she saw C.G. and Thomas talking that evening and that C.G. told her he was going back to the apartment with Thomas. Later, when R.E. and G.H. drove back to the apartment together, G.H. informed R.E. that he had heard Thomas was HIV positive. When R.E. and G.H. arrived at the apartment, Thomas and C.G. were already upstairs in C. G.'s bedroom with the door closed. Although R.E. called to C.G. and received no response, she could hear the motion of C. G.'s waterbed. G.H. testified that he was asleep on the couch when he was awakened by the

---

1. An expert witness called by the state testified that H.I.V. can be transferred under these circumstances.

sound of Thomas coming down the stairs from C. G.'s bedroom. G.H. briefly spoke with Thomas before he left the apartment. Later that morning after Thomas was gone, G.H. informed C.G. that Thomas was HIV positive. C.G. immediately called the police.

Thomas was charged by grand jury indictment with the transfer or attempted transfer of body fluids which may contain HIV, a violation of I.C. § 39–608. A trial was held and on April 11, 1997, the jury returned a guilty verdict. For his offense, the court sentenced Thomas to serve a unified fifteen-year term, with seven years fixed. Thomas filed a motion for reconsideration of his sentence, which the district court denied. Thomas appeals, challenging the sufficiency of the evidence and the length of his sentence. For the reasons stated below, we affirm.

## II.

## ANALYSIS

### A. The Evidence Was Sufficient To Support The Jury's Verdict Finding Thomas Guilty Of Transferring Body Fluid That May Contain HIV Beyond A Reasonable Doubt

■ Thomas argues that where the determination of his guilt or innocence rested solely on C. G.'s credibility and C. G.'s veracity was significantly undermined at trial, the jury lacked sufficient evidence to find him guilty of transferring or attempting to transfer body fluid that may contain HIV beyond a reasonable doubt. The appropriate standard of review on an allegation of insufficiency of evidence "is whether there is substantial and competent evidence to support the jury's verdict." *State v. Bush*, 131 Idaho 22, 32–33, 951 P.2d 1249, 1259–60 (1997), *citing State v. Aragon*, 107 Idaho 358, 366, 690 P.2d 293, 301 (1984); *see also State v. Nastoff*, 124 Idaho 667, 671, 862 P.2d 1089, 1093 (Ct.App. 1993) (when evidence is insufficient to support a guilty verdict, the conviction must be set aside). On review, this Court will not reweigh the significance of the evidence as it relates to specific elements but will merely examine the supporting evidence. *Id.* In addition, "[a]ll facts and inferences are to be construed in favor of upholding the lower court's decision." *Id.* Evidence is sufficient to support a verdict where there is substantial, even if conflicting, evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Bronnenberg*, 124 Idaho 67, 70, 856 P.2d 104, 107 (Ct.App.1993). We will not substitute our view for that of the jury as to witness credibility, the weight to be given to the testimony, or the reasonable inferences to be drawn from the evidence. *State v. Knutson,* 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991).

■ Thomas argues that the following factors undermine C. G.'s credibility and support his claim of insufficient evidence: C.G. practices deception in his daily life by dressing as a woman even though he is biologically a man; C.G. has a poor memory; C.G. suffers from bipolar disorder and clinical depression; C.G. has a polysubstance abuse history; C.G. consumed six to eight alcoholic beverages the evening of the incident involved here. Thomas maintains that these factors compromise C. G.'s ability to recall and relate, and cast considerable doubt on his assertion that Thomas engaged in sexual activity with C.G. without informing him of his HIV status.

Thomas also argues that since C.G. testified he thought Thomas was uncircumcised, while Thomas is in fact circumcised, C.G. must have confused Thomas with someone else. Finally, Thomas points to testimony offered by two of C. G.'s friends that C.G. is a person who has a reputation for being untruthful and dramatic.

■ Pursuant to I.C. § 39–608,

(1) Any person who exposes another in any manner with the intent to infect or, knowing that he or she is or has been afflicted with acquired immunodeficiency syndrome (AIDS), AIDS related complexes (ARC), or other manifestations of human immunodeficiency virus (HIV) infection, transfers or attempts to transfer any of his or her body fluid, body tissue or organs to another person is guilty of a felony . . . .

There are two defenses to this offense: (1) sexual activity between two consenting adults following full disclosure by the accused of the risk of such activity, or (2) the transfer of body fluids which occurs after advice from a licensed physician that the accused was non-infectious. Thus, in order to find Thomas guilty of transferring body fluid which may contain the HIV virus, the jury needed to conclude only that Thomas knowingly transferred or attempted to transfer his body fluid to C.G. without first informing C.G. of his HIV status; in other words, the jury need only believe C. G.'s testimony that the two engaged in oral and anal sex and that Thomas did not disclose his HIV positive status before engaging in those acts.

While Thomas may be correct in his assertion that the information elicited at trial tended to demonstrate C.G. was not the most credible witness, whether C.G. presented a tenable account of the events of the evening was a question for the jury to resolve. Moreover, C. G.'s account of the sexual activity between himself and Thomas was corroborated by R.E. and G. H., to the extent that they both observed C. G.'s closed bedroom door upon arriving at the apartment and G.H. subsequently observed Thomas walking down the stairs from C. G.'s bedroom in the early morning. Thus, even if the jury did not fully believe C. G.'s account of events that evening, the jury could have reasonably drawn the inference from R. E.'s and G. H.'s testimony that C.G. and Thomas had a sexual encounter. The jury could also infer from G. H.'s and R. E.'s testimony that Thomas failed to inform C.G. of his HIV status. G.H. testified that when he informed C.G. of Thomas' HIV status the next morning, "She was pretty upset. She was really mad." R.E. testified that C.G. confronted her and yelled at her, asking her why she did not inform him of Thomas' HIV status. From this testimony the jury could infer that Thomas did not inform C.G. of his HIV status prior to their sexual encounter. Neither R. E.'s nor G. H.'s testimony was disputed.[2] We conclude that there was substantial and competent evidence presented to support the jury's verdict finding Thomas guilty beyond a reasonable doubt of transferring body fluid which may contain HIV.

## B. Thomas' Sentence Is Not Unreasonable

■ Thomas argues that his sentence is unduly harsh and therefore unreasonable. He maintains that the goals of sentencing can be better served through probation or parole and rehabilitation. Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it constitutes a clear abuse of discretion. *State v. Hedger*, 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). A sentence which is unreasonable upon the facts of the case may constitute a clear abuse of discretion. *State v. Broadhead*, 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992). A sentence is reasonable if at the time of imposition it appears necessary to achieve "the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982). Where an appellant asserts that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record and focus upon the nature of the offense and the character of the offender. *State v. Hernandez*, 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991); *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

■ For the purpose of sentencing review, this Court considers the minimum period of incarceration to be the probable measure of confinement. *State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). Thomas' minimum period of confinement is seven years. Accordingly, Thomas must demonstrate that this seven-year period was an abuse of the district court's discretion.

■ For his offense, Thomas could have received a fixed fifteen-year term. Unfortunately, this is not the first time Thomas has had a sexual encounter while HIV positive without informing his partner. In 1990,

---

2. Thomas did not testify at his trial.

Thomas was convicted of rape (statutory) and sentenced to serve a fifteen-year sentence. Due to a sentence modification, Thomas served only nineteen months in prison before he was paroled in June of 1992. At the time of the rape, Thomas was aware of his HIV status, which he failed to disclose to his victim. Although Thomas' conduct following his release from prison, but prior to the instant offense, was laudable, Thomas appears unable to conform his conduct to the law with regard to his HIV status. The instant offense demonstrates Thomas' disregard for the health and safety of others when those interests are in competition with the fulfillment of his own personal desires.

For these reasons, we find no abuse of discretion in the court's imposition of a fixed seven-year sentence, followed by eight years indeterminate.

## III.

## CONCLUSION

We affirm Thomas' judgment of conviction for transferring body fluids which may contain the HIV virus and conclude that the district court's imposition of a unified fifteen-year sentence, with seven years fixed, was reasonable.

Chief Judge PERRY and Judge LANSING, concur.