181 P.3d 496

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Sky J. BEEBE, Defendant–Appellant.**

No. 33007.

Court of Appeals of Idaho.

Aug. 22, 2007.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Courtney E. Beebe, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Sky J. Beebe appeals from his conviction by jury for attempted robbery. Beebe contends that his conviction should be reversed because of insufficient evidence showing that he intended to use force or fear to take the victim's property and because of prosecutorial misconduct during the trial. We conclude that there is sufficient evidence to sustain the jury's verdict, but we vacate the judgment and remand for a new trial due to prosecutorial misconduct in closing argument.

## I.

## BACKGROUND

Beebe suffers from schizoaffective disorder, manifested by psychotic behavior, delusional thinking and hallucinations. On June 23, 2005, about one week before the incident that gave rise to this case, Beebe was placed on a psychiatric hold and was transferred to the mental health ward at the Kootenai Medical Center (KMC). Beebe reported to mental health caregivers that he had stopped eating and taking his medications because injuries he had suffered in a car accident made him feel "like his guts had burst inside." A physical examination yielded no evidence of injuries, however. Civil commitment proceedings were initiated, and on June 30, 2005, a magistrate ordered Beebe involuntarily committed to the custody of the Idaho Department of Health and Welfare, finding him to be mentally ill and in need of treatment. Beebe was returned to the KMC to await transport to an appropriate state facility.

The next morning, Beebe climbed over a fence and left the KMC. He walked two blocks to a gas station convenience store, went to the counter, and said to the female clerk, "Empty your till." The clerk later testified that Beebe appeared "dazed," "kind of out of it," "real quiet," "real calm," and "real mellow," and she said that he was not looking directly at her, but instead at "something else out there." The clerk testified that Beebe did not have a weapon, did not verbally threaten her, and did not act aggressively or violently. The clerk initially thought Beebe was joking, so she laughed. After Beebe repeated his statement a couple of times, and stated that "it is not a joke," the clerk turned her back on Beebe to call her manager. Beebe then left the store.[1]

Beebe walked a short distance away and sat down on the ground. When the police arrived, he was calm and compliant and was taken into custody without incident. Beebe told one officer that there was no need for police to ask the clerk to identify him because, "You don't need a positive ID. I did it." Another officer testified that when asked whether he had tried to rob the store, Beebe responded, "I guess." Beebe added, "It seemed like a good thing to do at the time," and explained that he needed money

1. The encounter, which lasted approximately thirty seconds, was captured on video, without audio.

in order to obtain an identification card, food and necessities. Beebe further told the officer that when the clerk declined to give him any money after he had asked a couple of times, he said "to hell with it" and walked out of the store.

Beebe's defense was that, as evidenced by his conduct coupled with his mental condition, he did not act with the intent to use force or fear to take money from the clerk against her will, and therefore did not have the requisite intent for the crime of attempted robbery. The jury disagreed and returned a guilty verdict. Beebe now contends that the verdict cannot stand because the evidence was insufficient to prove this mental element of the charged offense and because prosecutorial misconduct during closing argument tainted his trial.

## A. Sufficiency of the Evidence for Attempted Robbery

Appellate review of a challenge to the sufficiency of the evidence is limited. A jury verdict will not be set aside if it is supported by substantial and competent evidence upon which a rational trier of fact could find all elements of the crime beyond a reasonable doubt. *State v. Thomas*, 133 Idaho 172, 174, 983 P.2d 245, 247 (Ct.App.1999); *State v. Haley*, 129 Idaho 333, 334, 924 P.2d 234, 235 (Ct.App.1996). We may not substitute our opinion for that of the jury as to the credibility of witnesses or the weight to be given to their testimony. *State v. Gonzalez*, 134 Idaho 907, 909, 12 P.3d 382, 384 (Ct.App. 2000). The facts, and inferences to be drawn from those facts, are construed in favor of upholding the jury's verdict. *State v. Herrera–Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App.1998); *State v. Peite*, 122 Idaho 809, 823, 839 P.2d 1223, 1237 (Ct.App.1992).

Under Idaho law, robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." I.C. § 18–6501. Robbery thus requires the intent to use force or fear to overcome the will of the victim. *State v. Olin*, 112 Idaho 673, 675, 735 P.2d 984, 986 (1987); *State v. Martinez*, 133 Idaho 484,

487, 988 P.2d 710, 713 (Ct.App.1999); *State v. Belue*, 127 Idaho 464, 466, 902 P.2d 489, 491 (Ct.App.1995); ICJI 501. One who attempts to commit a crime, but fails or is prevented or intercepted in the effort, is subject to punishment for the attempt, I.C. § 18–306. The mental element required for robbery is a component of the elements required to sustain a conviction for attempted robbery. *State v. Fabeny*, 132 Idaho 917, 923, 980 P.2d 581, 587 (Ct.App.1999). *See also State v. Gibson*, 106 Idaho 491, 492, 681 P.2d 1, 2 (Ct.App.1984) (attempted subornation of perjury). In Beebe's case, therefore, the State was required to prove, among other things, that Beebe intended to take property from the clerk by force or fear. *Fabeny*, 132 Idaho at 923, 980 P.2d at 587.

Criminal intent can be inferred from the commission of acts and the surrounding circumstances. *State v. Oldham*, 92 Idaho 124, 132, 438 P.2d 275, 283 (1968); *State v. Booton*, 85 Idaho 51, 375 P.2d 536 (1962); *Belue*, 127 Idaho at 467, 902 P.2d at 492; *State v. Nastoff*, 124 Idaho 667, 671, 862 P.2d 1089, 1093 (Ct.App.1993). Fear and the force of fear may be created not merely by threatening words or gestures but also by threatening circumstances. *State v. Knee*, 101 Idaho 484, 487, 616 P.2d 263, 266 (1980). Thus, in *Knee* our Supreme Court held that, where no words were spoken but the perpetrator wore a ski mask and had a hand in a coat pocket, the clerk fled, and the perpetrator grabbed money and ran, the evidence supported the intent element for robbery. It is unnecessary for a victim to actively resist the perpetrator in order to provoke a more compelling show of force. *Id. See also State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991).

Under Idaho law, insanity or other mental condition is not a defense to a charge of criminal conduct, I.C. § 18–207(1), but evidence of mental illness may be used to show that the accused did not possess the state of mind that is an element of the offense. I.C. § 18–207(3). Here, Beebe argues that, in view of his severe mental illness and the evidence that he made no verbal threats or threatening gestures, carried no weapon, and appeared calm and dazed, the evidence did

not demonstrate that he harbored the intent to take money from the clerk by means of force or fear.

Although this is a close question, we conclude that the State's evidence of intent was sufficient. The evidence that Beebe and the clerk were alone in the store at the time, that the clerk was female and Beebe was a larger male, and that he insistently repeated his demand that she "empty the till," supports a reasonable inference that Beebe's intent was to obtain the money in the till by frightening the clerk into compliance. Bearing in mind that appellate review of a verdict is not an opportunity for this Court to substitute its view for that of the jury concerning the weight of the evidence or the reasonable inferences to be drawn, we hold that the jury's verdict finds adequate support in the trial evidence.

## B. Prosecutorial Misconduct

■ Beebe also argues that prosecutorial misconduct during closing argument warrants a reversal of his conviction. Where, as here, there has been a contemporaneous objection to prosecutorial misconduct, we determine whether the challenged conduct constitutes misconduct, and if so, whether the error was harmless. *State v. Hodges*, 105 Idaho 588, 590–92, 671 P.2d 1051, 1053–55 (1983); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct.App.2007).

Beebe complains of three episodes of misconduct during the prosecutor's closing arguments. They are: (1) a misstatement of the evidence bearing on the crucial issue of Beebe's intent, (2) appeals to the jury to render a decision based on sympathy for the victim and the need for crime prevention rather than the evidence bearing on Beebe's guilt or innocence, and (3) indirect comments on Beebe's failure to testify at trial, in violation of his Fifth Amendment privilege against self-incrimination. Because we conclude that the first two of these episodes constitute improper closing argument amounting to misconduct that necessitates a

new trial for Beebe, we do not address the third.[2]

### 1. Misstatement of the evidence

■ After defense counsel's closing argument urged the jury to find that Beebe lacked intent to use force or fear, the prosecutor presented a rebuttal that included the following:

> ... the bottom line, it comes down to this question of intent. Defense says how do we know he intended this. Well, beyond his actions, which speak for themselves, we know it because we have it from his own mouth. He confessed repeatedly, in fact persistently and consistently he confessed. He told the police *I intended to do this.*

Defense counsel thereupon objected that the prosecutor had misstated the evidence. The district court neither sustained nor overruled the objection, but commented that the jury had already been instructed that, if an attorney misstates evidence, the jury is to be guided by the evidence and not by the attorney's erroneous statement.

We agree with Beebe that the italicized portion of the argument is a misrepresentation of the evidence. Neither police officer testified that Beebe said, "I intended to do this," or that he intended to use force or fear to take money. Rather, one officer testified that Beebe stated that there was no need for the clerk to physically identify him because "I did it." Another officer testified that when he asked Beebe whether he "tried to rob the store," Beebe responded "I guess." These admissions that Beebe made to the officers acknowledged that he was the person who entered the store and asked for cash from the till. They do not include an admission that those acts were accompanied by an intent to use force or fear to take money from the clerk's possession.

The distinction between the witnesses' testimony and the prosecutor's argument, though subtle, is important in this case, where the defense was based solely on the premise that the severely mentally ill defendant did not harbor the intent that was an

---

**2.** The parties and the district court are referred to the Court's recent decision, *State v. McMurry*, 143 Idaho 312, 143 P.3d 400 (Ct.App.2006), for an extensive discussion of the issue of indirect prosecutorial comment upon an accused's failure to testify.

element of the offense. The prosecutor's misrepresentation that Beebe had "repeatedly," "persistently," and "consistently" confessed to having the disputed intent was thus far more significant than such a misstatement might be in a different trial.

■ It is plainly improper for a party to present closing argument that misrepresents or mischaracterizes the evidence. *State v. Raudebaugh,* 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *State v. Griffiths,* 101 Idaho 163, 166, 610 P.2d 522, 525 (1980); *Phillips,* 144 Idaho at 86, 156 P.3d at 587; *State v. Tupis,* 112 Idaho 767, 771–72, 735 P.2d 1078, 1082–83 (Ct.App.1987). Therefore, Beebe has shown that this statement, to which he timely objected, constituted prosecutorial misconduct.

**2. Appeal for jury to consider factors other than evidence of guilt**

■ The second component of the prosecutor's closing argument of which Beebe complains is the following:

> The defense has been trying to kind of mix apples and oranges throughout the testimony here. You have heard a lot of talk about the civil commitment hearing the defendant underwent that basically found he was a danger to himself or others and he had to be hospitalized for his own protection. Well, that's a civil hearing. And, obviously, the concern there is you want to try to take care of people who are mentally ill. And the state has a system for that and, of course, that is a good thing. That is great. But that's a different thing than what we are talking about here. This is a criminal case. *And one of the concerns we have in a criminal case is protecting the public.*
>
> [DEFENSE COUNSEL]: Your Honor, that is misconduct. I object and ask that that remark be stricken, It is an appeal to—
>
> THE COURT: Well, I'll sustain the objection, I guess, and you can just rephrase it.
>
> [PROSECUTOR]: *The point in a criminal case obviously, by definition, is we are trying to stop crimes from being committed.* It is not a civil action where we are

saying let's care for the mental health of this person. There is a system for that. It is a different system. We are talking about crimes committed. The person, in a robbery case and any robbery case with any defendant, *a person like Wendy Leach has a right to be able to go to work and not all of a sudden be put in a position where she is afraid by what is going to happen to me if I don't give this guy the money in the till.* Does he have a gun in there? Does he have a knife in there? What's he going to do to me if I don't do this? She has a right to go to work and get her paycheck and go home.

> *[The store] has a right to know that their money is safe and someone isn't going to show up and try to take their money.* So it is a different concern here in the criminal justice system we are talking about. *So obviously it makes a lot of sense if you were going to open the doors to people saying I am allowed to commit crimes because of the mental illness I have.*

Defense counsel thereupon objected again that this was not proper argument as it was an appeal to the passion and prejudices of the jury, and he asked that the last portion of the argument be stricken. The court did not expressly sustain nor overrule the objection but did caution the prosecutor not "to spend a lot of time arguing about the wisdom of the law" because "[t]hat's not the jury's concern."

Beebe argues that the prosecutor's statements were improper appeals for the jury to convict Beebe out of sympathy for the victim clerk and store or in order to prevent crime or protect society from mentally ill persons.

The State responds that the prosecution's comments were merely "a description of the jury instruction on mental illness and a comment on the different standards of a civil commitment and a criminal case." If that was in fact the prosecutor's purpose, it was an inartful attempt at best. The prosecutor made no mention of any jury instruction he was attempting to address, and the State's present characterization of the argument provides no explanation for, nor defense of, the prosecutor's suggestion that protecting

the public and the rights of the clerk and the store not to be victimized by a robbery were proper matters of concern for the jury.

 While this Court cannot say what the prosecutor's intent was in making these statements, we can say that the comments fall outside the correct focus of closing argument. Closing argument is an opportunity for the parties to clarify the issues that must be resolved by the jury; to review the evidence with the jury and discuss, from the parties' respective standpoints, the inferences to be drawn therefrom; and to discuss the law set forth in the jury instructions as it applies to the trial evidence. *See generally State v. Sheahan,* 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *State v. Reynolds,* 120 Idaho 445, 449–50, 816 P.2d 1002, 1006–07 (Ct.App. 1991). Urgings, explicit or implied, for the jury to render a verdict based on factors other than the evidence admitted at trial and the law contained in the jury instructions have no place in closing arguments. It follows that the prosecutor's comments here about concerns to protect the public and the rights of the victims were outside the boundaries of proper closing argument.

Most troublesome to this Court, however, is the final sentence of the excerpt quoted above in which the prosecutor cautioned against "open[ing] the doors to people saying I am allowed to commit crimes because of the mental illness I have." This portion of the argument grotesquely mischaracterized Beebe's defense that he had harbored no intent to frighten or use force against the clerk and that his bizarre behavior was, instead, the product of his mental illness. To suggest to the jury that it would be "opening the doors" to excusing criminal conduct and that Beebe claimed he was "allowed to commit crimes" because he was mentally ill disparaged and distorted his defense and was plain misconduct.

### 3. Harmless error analysis

 Like other trial error, prosecutorial misconduct does not necessitate the reversal of a conviction and a new trial for the defendant if, in the context of the entire trial, the error was harmless. Error will be deemed harmless if the appellate court is

persuaded beyond a reasonable doubt that the jury's verdict would have been the same if the misconduct had not occurred. *Hodges,* 105 Idaho at 591–92, 671 P.2d at 1054–55; *Phillips,* 144 Idaho at 88, 156 P.3d at 589. Applying that standard, we cannot say that the misconduct here was harmless. Although we have held that the State's evidence in this case met the threshold of sufficiency to sustain a guilty verdict, such that Beebe is not entitled to a judgment of acquittal, the State's evidence was far from overwhelming, as evidenced by the dissenting opinion in this case. We conclude it is reasonably possible that the jurors would have acquitted Beebe if they had not been exposed to the prosecutor's misrepresentation of the testimony, mischaracterization of the defense theory as a claim of entitlement for the mentally ill to commit crimes, and references to matters that should not be factored into the jury's determination of guilt or innocence, such as concerns for protecting the public and victims' rights. Therefore, Beebe is entitled to a new trial.

The judgment of conviction is vacated, and this matter is remanded to the district court for further proceedings.

Chief Judge PERRY concurs.

Judge GUTIERREZ concurring in part and dissenting in part.

I respectfully dissent as to the conclusion reached in Part A of the majority opinion. In my view, the evidence adduced at trial was insufficient to sustain the defendant's conviction for attempted robbery. More specifically, the prosecution failed to produce substantial and competent evidence upon which a rational trier of fact could conclude that Beebe intended to use force or fear to obtain money from the store clerk.

Putting aside for the moment the issue of Beebe's mental health, the incident occurred during the daylight hours, about 8:00 a.m. The store video shows Beebe walking up to the counter next to the clerk. During the encounter, the clerk is reviewing a piece of paper and, at the same time, manipulating the cash register with no break in activity. There is no altercation and Beebe makes no

aggressive or threatening movements. The clerk then turns her back on the defendant and walks away.

The clerk's testimony was straightforward and brief. On direct examination she testified that Beebe walked in the door "came up to the counter and asked me to empty my till" and that "he looked a little dazed, kind of out of it, real quiet, real calm" and he "just walked up with his hands in his pockets, real mellow." The clerk thought he was joking and laughed. Beebe repeated the statement and the clerk responded, "No." Beebe repeated the statement again and added that "it is not a joke." The clerk then left the counter and called her manager. On cross-examination, the clerk testified that Beebe did not brandish a weapon, did not verbally threaten her, and did not act aggressively or violently. When asked to describe Beebe's demeanor, the clerk stated that "he just had a distant look in his eyes," that "he wasn't really focused on me so much as something else out there," and that he "wasn't all there."

Beebe then left the store, walked a short distance away and sat down on the ground until the police arrived and he was arrested. Evidence at trial established that Beebe has mental health issues. The day before the incident, he was involuntarily committed to the custody of the Idaho Department of Health and Welfare, presumably with the full participation of the Kootenai County prosecutor's office.

Appellate review of sufficiency of the evidence to sustain a criminal conviction is highly deferential to the jury verdict and appellate courts do not often vacate a conviction on this ground. Nonetheless, application of the standards cannot amount to complete deference, as this results in no review at all. The applicable standard of review is "whether there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Young*, 138 Idaho 370, 372, 64 P.3d 296, 298 (2002). As the standard incorporates some objective components, namely "substantial" and "rational," a limited amount of objective review is warranted.

In this light, my disagreement with the majority is not on the law regarding review of sufficiency of the evidence but in its application to the facts of this case. Admittedly, review of the evidence regarding whether a defendant's mental state has been proved is difficult, as that element must, in almost all cases, be inferred by the jury in the first instance from the defendant's commission of acts and the surrounding circumstances. Here, the majority concludes that the circumstances support "a reasonable inference that Beebe's intent was to obtain the money in the till by frightening the clerk into compliance." I cannot agree, as inferences must be based upon facts and, here, there is lacking any substantial evidence that Beebe intended to frighten the clerk into compliance. Beebe had no weapon and did not act or speak in a threatening manner. Instead he was, according to the clerk, "dazed." Indeed, the clerk did not testify that anything Beebe said or did was threatening or frightening to her, and her actions on the video are not those of a person so threatened or frightened. Simply stated, review of Beebe's acts and the circumstances, including his mental condition, lead me to the conclusion that the State failed to prove the mental element of the crime beyond a reasonable doubt and no rational jury should have convicted on the evidence presented. I would so hold.

This being said, I fully concur in the majority's conclusion in Part B that, given the weakness of the evidence presented, the prosecutorial misconduct was not harmless. Because Beebe's judgment of conviction is not being vacated due to insufficient evidence, he can be retried.