233 P.3d 147

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Gabriel Carlos HERRERA aka Luis Montes Garcia, Defendant–Appellant.**

**State of Idaho, Plaintiff–Respondent,**

v.

**Felipe De Jesus Oernelas–Perez aka William Omar Martinez–Sanchez, Defendant–Appellant.**

Nos. 33241, 33284.

Court of Appeals of Idaho.

Jan. 6, 2009.

Review Denied March 6, 2009.

Stephen D. Thompson, Ketchum, for appellant Gabriel Carlos Herrera.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant Felipe Oernelas–Perez. Dennis Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Kenneth K. Jorgensen, Deputies Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Chief Judge.

Gabriel Carlos Herrera and Felipe De Jesus Oernelas–Perez were charged with conspiracy to traffic in heroin and conspiracy to traffic in cocaine. After a jury trial, they were convicted of conspiracy to traffic in heroin and the lesser offense of delivery of cocaine. In this consolidated appeal, Herrera and Oernelas–Perez contend that there was not sufficient evidence to support either the jury's instruction or the jury's finding as to the amount of heroin involved in the heroin trafficking charge, that the court improperly entered a conviction on the uncharged crime of delivery of cocaine, and that their rights were violated when they were required to share a single interpreter during the final day of their trial. We find no reversible error.

## I.

## BACKGROUND

The following facts are drawn from the State's evidence at trial. Tyna Brown, a woman whose drug-dealing husband had recently been incarcerated, decided to continue operating her husband's "business." She began making daily purchases of cocaine and heroin from John Davis in late May of 2005. Davis acquired the drugs from Herrera and Oernelas–Perez (hereinafter "the defendants"). After purchasing from Davis, Brown would retain some of the drugs for her own use and sell the remainder to her husband's former customers. According to Brown's and Davis's trial testimony, daily purchases during that period generally ranged from thirty to sixty balloons of heroin, each containing .1 grams of the drug, and a similar or somewhat lesser amount of cocaine. On August 22, 2005, Brown was arrested and was asked if she would cooperate with police by making a controlled purchase from Davis. Hoping for leniency, she agreed. On the same day, the police gave Brown $1,000, which she took to Davis's house to make a purchase. While she was there, the defendants arrived to deliver the drugs and pick up their money. The defendants told Davis they did not have all the drugs requested, but would deliver the balance later. They were arrested before they could do so. The defendants had delivered fifty-two balloons of heroin and five balloons of cocaine in this controlled buy, though approximately sixty-three balloons of heroin and seven balloons of cocaine had been requested by Brown. Of the drugs that Brown received, thirty of the heroin balloons and three of the cocaine balloons were tested by law enforcement. The tested heroin totaled 2.8 grams and the tested cocaine totaled .41 grams. These weights roughly corroborated the testimony that each balloon purchased over the three-month period preceding August 22 generally contained about .1 grams of the relevant controlled substance.

The defendants were eventually charged with conspiring to traffic in heroin and conspiring to traffic in cocaine during a period between May 23 and August 22, 2005, Idaho Code §§ 37–2732B(a)(6), –2732B(b), –2732B(a)(2). Brown and Davis, who were similarly charged, entered into plea agreements, and testified for the State at the defendants' trial.

The jury was instructed on the charged conspiracy offenses and on several lesser crimes that were deemed to be included offenses. The special verdict forms required the jury to indicate the quantity of each substance they found to have been involved in each conspiracy. The jury's answers on special verdict forms found the defendants guilty of conspiring to traffic in heroin involving at least 7 but less than 28 grams, conspiring to traffic in cocaine involving less than 28 grams, and a lesser offense of delivering

cocaine. Because the offense of conspiracy to traffic in cocaine requires that the conspiracy involve at least 28 grams, the district court did not enter judgments of conviction against the defendants for that charged offense but entered convictions for delivery of cocaine.

The defendants appeal, asserting insufficiency of the evidence to support the heroin conspiracy conviction, error in entering a conviction for delivery of cocaine, and error in proceeding with the trial on one day when only a single interpreter was available to translate for both defendants.

## II.

## DISCUSSION

### A. Sufficiency of the Evidence of Conspiracy to Traffic in Heroin

■ We first consider the defendants' argument that the evidence is insufficient to support the jury's verdict finding them guilty of conspiracy to traffic in heroin. The defendants were charged with reference to section 37–2732B(a)(6) of the Idaho Code, which states that anyone who knowingly "manufactures, delivers or brings into this state, or who is knowingly in actual or constructive possession" of two or more grams of heroin or certain related substances or mixtures is guilty of trafficking in heroin. Though trafficking in heroin requires only two grams, the penalty for trafficking or conspiring to traffic is higher if the amount is at least 7 but less than 28 grams, and higher still for 28 grams or more. I.C. § 37–2732B. One conspires to traffic in heroin when he or she "agrees, conspires, combines, or confederates with another person or solicits another person" to traffic in heroin, and can be punished as though he or she had actually trafficked. I.C. § 37–2732B(b). The defendants' challenge to the verdict hinges upon the *amount* of heroin that the jury found to be involved in the conspiracy. They contend that the trial evidence does not support the finding of a conspiracy to traffic in at least 7 but less than 28 grams of heroin.

It is axiomatic that in an appeal from a judgment entered on a jury verdict, we will not set aside the verdict if it is supported by substantial and competent evidence. *State v. Clayton,* 101 Idaho 15, 16, 607 P.2d 1069, 1070 (1980); *State v. Gerdau,* 96 Idaho 516, 518, 531 P.2d 1161, 1163 (1975); *State v. Beebe,* 145 Idaho 570, 573, 181 P.3d 496, 499 (Ct.App.2007). Evidence is sufficient to sustain a conviction if it would allow a rational trier of fact to conclude that the defendant's guilt as to each material element has been proved beyond a reasonable doubt. *State v. Matthews,* 124 Idaho 806, 813, 864 P.2d 644, 651 (Ct.App.1993). Substantial evidence does not mean that the evidence need be uncontradicted:

> All that is required is that the evidence be of sufficient quantity and probative value that reasonable minds *could* conclude that the verdict of the jury was proper. It is not necessary that the evidence be of such quantity or quality that reasonable minds must conclude, only that they *could* conclude.

*Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974) (emphasis added).

The State's witnesses testified that the defendants had delivered to Brown an average of thirty to sixty .1 gram "balloons" of heroin every day for a period of approximately three months between the arrest of Brown's husband in May and the August 22, 2005, controlled buy. The amounts in the balloons purchased under police supervision on August 22 roughly coincided with the approximations given for the daily buys over that three-month period. These testimonial estimations would have supported a finding that several hundred grams of heroin had been trafficked during the three months encompassed in the indictment. The defendants concede that this evidence was sufficient for a jury to reasonably find that the conspiracy involved 28 or more grams of heroin. They maintain, however, that because the trial evidence showed *only* deliveries cumulating to more than 28 grams, it cannot support the jury's finding that the conspiracy to traffic in heroin involved *less than* 28 grams.

We disagree. As the State points out, evidence of a conspiracy to traffic in more

than 28 grams intrinsically supports a finding of a conspiracy to traffic in less than that amount, for one cannot deal in more than twenty-eight items without dealing in the lesser numbers leading up to that sum. A jury could reasonably find that the State met its burden to prove beyond a reasonable doubt that the conspiracy involved at least 7 grams while not being convinced beyond a reasonable doubt that the amount was 28 grams or more. As in stories about the fish that got away, where a listener may believe the fugitive trout was at least twelve inches long but not be convinced of the claimed eighteen, it is reasonable for a jury to unanimously find beyond a reasonable doubt that at least 7 but less than 28 grams were involved in a conspiracy even if the same unanimity does not exist as to a larger amount. This is especially so given that the witnesses who testified to the amount distributed gave estimations based on their memory as to what usually happened and also given that these witnesses' estimations did not precisely coincide.

The defendants also assert that the district court should not have instructed on conspiracy to traffic in heroin involving fewer than 28 grams because the evidence would not support such an instruction.[1] We reject this argument for the same reasons just stated regarding the sufficiency of the evidence to support the verdict.

## B. Conviction for Delivery of Cocaine

The next issue on appeal arises from an error in the jury instructions on the charge of conspiracy to traffic in cocaine, which led to an anomaly in the verdict on that charge. Trafficking in cocaine differs significantly from trafficking in heroin because it involves at least 28 grams of the drug, I.C. § 37–2732B(a)(2), while heroin trafficking occurs when the amount is as small as 2 grams. Accordingly, the charged offense of conspiracy to traffic in cocaine required that the State prove that the defendants' conspiracy involved 28 grams or more of cocaine. The special verdict form, however, allowed the jury to find the defendant guilty of conspiracy to traffic in cocaine, while at the same time finding that the conspiracy involved less than 28 grams. The verdict form also asked the jury to address certain lesser offenses. The pertinent verdict form questions and the jury's answers were as follows:

**Question No. 1:** As to the offense of COUNT 1: CONSPIRACY TO TRAFFIC IN COCAINE, we, the jury, find [the defendant]:

**Not Guilty** _____ **Guilty** X

If you unanimously answered Question No. 1 "**Guilty**", then you should proceed to Question No. 1(a). If you unanimously answered Question No. 1 "**Not Guilty**", then you should proceed to Question No. 2.

**Question No. 1(a):** We, the jury, find beyond a reasonable doubt that the amount of cocaine involved in the conspiracy offense was 28 grams or more.

**Yes** _____ **No** X

If you unanimously answered Question No. 1(a) "**Yes**", then you should simply sign the verdict form and advise the bailiff. If you unanimously answered Question No. 1(a) "**No**", then proceed to answer Question No. 2.

**Question No. 2:** As to the lesser included offense of COUNT I: DELIVERY OF COCAINE, you must first determine if [the defendant] was in possession of Cocaine;

We, the jury, unanimously find [the defendant]:

**Not Guilty** _____ **Guilty** X

of POSSESSION OF COCAINE.

If you unanimously answered Question No. 2 "**Guilty**", then you should proceed to answer Question No. 3. If you unanimously answered Question No. 2 "**Not Guilty**" then you should proceed to Question No. 5.

---

1. The elements instruction on conspiracy to traffic in heroin was incorrect, stating that the jury needed to find that the defendants conspired to possess 28 grams or more of heroin, even though the relevant statute requires only two grams or more. The elements instruction was perhaps derived from the indictment, which stated the conspiracy was for 28 grams or more. This error in the elements instruction is not challenged here and appears not to have been detrimental to the defendants.

**Question No. 3:** We, the jury, find [the defendant]:

**Not Guilty** _____ **Guilty** _X_

of delivery of the Cocaine to another.

Thus, although the jury's answer to Question No. 1 found the defendants guilty of conspiracy to traffic in cocaine, their answer to Question No. 1(a), finding the amount involved was not 28 grams or more, was inconsistent with their response to Question No. 1.[2] This inconsistency in the jury's answers to Questions No. 1 and 1(a) led them to continue to Questions 2 and 3, on which they determined that the defendants were also guilty of possession of cocaine and delivery of cocaine.

■ Faced with the jury's answer to Question No. 1(a), the district court determined that the jury had effectively acquitted the defendants of conspiracy to traffic in cocaine and therefore entered a judgment of conviction and imposed sentence for the lesser offense of delivery of cocaine. The defendants contend that this was error. They appear to assert two bases for this claim. First, they contend that they should have been acquitted entirely because the jury found that they had conspired to traffic in an amount less than 28 grams of cocaine, which is legally impossible under the I.C. § 37–2732B(a)(2) definition. The defendants cite no legal authority, however, nor present any reasoned argument as to why acquittal of the charged offense in this circumstance would preclude the jury's consideration of a lesser included offense. We therefore do not address this contention. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

■ The defendants' second argument is that delivery of cocaine is not an included offense of conspiracy to traffic in cocaine, the charge on which they were indicted in Count II, and it was therefore improper for the court to instruct the jury on delivery as a lesser included offense pursuant to I.C. § 19–2132(b).[3] We do not resolve this issue, however, because the defendants did not object to this jury instruction below. In fact, Oernelas–Perez requested it, and the transcript shows that Herrera was also in favor of it. Thus, the asserted error was invited and not subject to attack on appeal. *See State v. Johnson*, 126 Idaho 892, 896–97, 894 P.2d 125, 129–30 (1995). Even if not literally invited by Herrera, it is not reviewable on appeal because he did not object to the instruction and does not assert that the instruction was fundamental error. *See State v. Anderson*, 144 Idaho 743, 749, 170 P.3d 886, 892 (2007).

In order to avoid the bar to appellate review created by their assent to the delivery instruction, the defendants have also attempted to frame this issue as a question of the trial court's subject matter jurisdiction because an absence of subject matter jurisdiction is never waived and can be raised for the first time on appeal. *State v. Rogers*, 140 Idaho 223, 227–28, 91 P.3d 1127, 1131–32 (2004); *State v. Davis*, 144 Idaho 276, 278, 159 P.3d 913, 915 (Ct.App.2007); *State v. McCarthy*, 133 Idaho 119, 122, 982 P.2d 954, 957 (Ct.App.1999). According to the defendants, although the indictment imparted subject matter jurisdiction upon the district court for prosecution of the defendants for conspiracy to traffic in cocaine, it did not impart jurisdiction for a charge that they delivered cocaine, and therefore the district court lacked jurisdiction to give the challenged instruction. This argument is without merit. The district court acquired subject matter jurisdiction in the defendants' cases upon the filing of the indictment. *State v. Jones*, 140 Idaho 755, 757–58, 101 P.3d 699, 701–02 (2004). Even if an improper lesser included offense instruction was given, the court's subject matter jurisdiction that was conferred via the indictment remained

---

**2.** It should be noted that Question No. 1(a) was superfluous and ought to have been omitted from the verdict form. The jury had been properly instructed on the elements of conspiracy to traffic in cocaine, including the requirement that the amount involved be 28 grams or more. Therefore, a jury who correctly understood the instructions would have determined whether the amount involved was 28 grams or more before answering Question No. 1.

**3.** The indictment alleged, as part of the overt acts taken in furtherance of the conspiracy, that the defendants delivered or arranged for the delivery of cocaine to Tyna Brown and delivered cocaine to John Davis at various locations in Ada County.

throughout the trial, for subject matter jurisdiction does not depend upon the correctness of any decision made by the court. *Rogers,* 140 Idaho at 228, 91 P.3d at 1132. Accordingly, the defendants' challenge to the delivery instruction, raised for the first time on this appeal, will not be considered by this Court.

## C. Sharing an Interpreter on the Final Day of Trial

Initially, the defendants each had an interpreter appointed to interpret trial proceedings for them, but on the third and final day of trial one interpreter failed to appear. The defendants objected to proceeding with only one interpreter, contending that it would impede their ability to converse with their respective counsel during the trial. The court overruled this objection and proceeded with the trial, requiring the single interpreter to interpret for both defendants. On appeal, the defendants argue that being required to share a single interpreter on the final day of trial violated an Idaho statute and two court rules and deprived them of their Sixth Amendment rights and their Fourteenth Amendment right to due process. They assert that the interpreter-sharing arrangement prevented them from meaningfully participating in their own defense on the third day of trial because they were unable to communicate with counsel during the testimony of witnesses.

■ A court's decision regarding appointment of an interpreter is generally discretionary, *State v. Alsanea,* 138 Idaho 733, 741, 69 P.3d 153, 161 (Ct.App.2003), but a question as to whether a trial court's decision met minimum statutory or constitutional requirements is an issue of law subject to free review. *Anderson,* 144 Idaho at 746, 170 P.3d at 889; *State v. Bowman,* 124 Idaho 936, 940, 866 P.2d 193, 197 (Ct.App.1993). The interpretation of statutes and judicial rules is also a matter of free review. *State v. Reyes,* 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct.App.2003). *State v. Slater,* 133 Idaho 882, 888, 994 P.2d 625, 631 (Ct.App.1999). Where the language is plain and unambiguous, we give effect to a statute as written and may not add to nor subtract from the statute

by judicial construction. *Parsons v. Mutual of Enumclaw Ins. Co.,* 143 Idaho 743, 746, 152 P.3d 614, 617 (2007); *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight,* 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar,* 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct.App.2000). When interpreting a statute, we give the statutory language its plain, obvious, and rational meaning. *Burnight,* 132 Idaho at 659, 978 P.2d at 219.

■ We address first the defendants' contention that the court's failure to provide separate interpreters violated I.C. § 9–205, Idaho Criminal Rule 28, and Idaho Court Administrative Rule 52. Idaho Code § 9–205 states:

> In any civil or criminal action in which any witness or a party does not understand or speak the English language ... the court shall appoint a qualified interpreter to interpret the proceedings to and the testimony of such witness or party. . . .

Idaho Criminal Rule 28 similarly provides:

> In any criminal action in which any witness or a party does not understand or speak the English language ... the court shall appoint a qualified interpreter to interpret the proceedings and the testimony of such witness or party. . . .

At the time of the defendants' trial, Administrative Rule 52 provided:

> (a) ... It is the policy of the Supreme Court and the intent of these rules to secure the rights, constitutional and otherwise, of persons who, because of a non-English-speaking cultural background ... are unable to understand or communicate adequately in the English language when they appear in the courts or are involved in court proceedings.
>
> . . . .
>
> (d)(1) ... [A]n interpreter shall be appointed when an interpreter is requested or when the appointing authority determines that a principal party in interest or witness does not communicate in or understand the English language sufficiently to

permit effective participation in a court proceeding.[4]

The defendants have not demonstrated that the statute or these rules were violated. The statute and rules simply state that an interpreter must be appointed in certain circumstances to interpret for a witness or party. They do not say each party must be given a personal interpreter, and we conclude that such a requirement need not be read into the texts in order to effectuate their purpose. We will not add by judicial interpretation words that simply are not found in the statute or rules. Because at least one interpreter provided service for both defendants at all times throughout the trial, there was compliance with the statute and rules.

■ The defendants next argue that they were entitled to separate interpreters to protect their rights under the Sixth and Fourteenth Amendments. Idaho appellate courts have not previously addressed this issue, but numerous other jurisdictions, discussed below, have rejected similar claims. While these jurisdictions generally recognize that guarantees within the United States Constitution require provision of an interpreter for an indigent defendant who does not understand English, we have found none going so far as to hold that the Constitution requires separate interpreters for each of several co-defendants. In *United States v. Cirrincione*, 780 F.2d 620, 634 (7th Cir.1985), for example, the court set forth circumstances in which the lack of an interpreter would amount to a deprivation of due process:

[A] defendant in a criminal proceeding is denied due process when: (1) what is told to him is incomprehensible; (2) the accuracy and scope of a translation at a hearing or trial is subject to grave doubt; (3) the nature of the proceeding is not explained to [the defendant] in a manner designed to insure his full comprehension; or (4) a credible claim of incapacity to understand due to language difficulty is made and the

district court fails to review the evidence and make appropriate findings of fact.

These circumstances can be avoided without provision of separate interpreters for each defendant.

In *United States v. Johnson*, 248 F.3d 655 (7th Cir.2001), a court-appointed interpreter translated the proceedings through a microphone that fed into headsets worn by three defendants. An attorney objected that this arrangement did not allow his client to speak to the attorney during the presentation of evidence. It was resolved that the defendants would take notes regarding matters they wished to discuss with counsel and then could request breaks in the proceeding so the interpreter could facilitate those communications. The Seventh Circuit held that this arrangement did not violate the Fifth Amendment right to due process or the defendants' Sixth Amendment rights. The Court said:

While we do read the Constitution as ensuring a defendant's right to communicate with his or her counsel, we do not read the Constitution as mandating the appointment of an additional interpreter to sit at the defense table. The solution adopted by the district court to allow the defendants to use the court-appointed interpreter to communicate with their counsel during breaks fulfilled the defendants' right to communicate with counsel. The record reflects that the defendants' communication with counsel was not constitutionally infirm.

*Id.* at 664.

A similar conclusion was reached in *United States v. Bennett*, 848 F.2d 1134, 1141 (11th Cir.1988), *superseded on other grounds by rule as stated in United States v. Moore*, 504 F.3d 1345 (11th Cir.2007), where an interpretation was fed into headsets worn by three defendants. Two of the defendants complained that the lack of individual interpreters prevented their communication with counsel during the course of the trial. The

---

4. Administrative Rule 52(d)(1) has been amended effective August 28, 2008, and now provides:

(1) ... [A]n interpreter shall be appointed when the appointing authority or his/her designee determines that a principal party in inter-

est or witness does not communicate in or understand the English language sufficiently to permit effective participation in a court proceeding.

Eleventh Circuit noted that the defendants had ample opportunity to consult with their attorneys, for the court had offered to recess the proceedings whenever the defendants needed to consult with counsel through the interpreter, and this arrangement satisfied the defendants' rights under the Sixth Amendment. "Here," the Court of Appeals said, "the court's use of the interpreter represented a proper balancing of appellants' constitutional rights to confrontation and due process against the public's interest in the economical administration of criminal law." *Id.* at 1141 (internal quotation marks omitted). *See also United States v. Sanchez,* 928 F.2d 1450, 1456 (6th Cir.1991), *abrogated on other grounds by United States v. Jackson–Randolph,* 282 F.3d 369, 388–89 (6th Cir. 2002); *Dang v. United States,* 741 A.2d 1039, 1045 (D.C.App.1999); *Rondon v. State,* 534 N.E.2d 719, 728–29 (Ind.1989); *People v. Tomas,* 136 Ill.App.3d 1054, 91 Ill.Dec. 782, 484 N.E.2d 341, 344 (1985).

The only decisions cited by the defendants holding that separate interpreters are required come from California and are based upon a provision of that state's constitution requiring that interpreters be provided for criminal defendants "throughout the proceedings." CAL. CONST. art. I, § 14. The California courts hold that this state constitutional provision mandates that each criminal defendant have his or her own interpreter. *People v. Rodriguez,* 42 Cal.3d 1005, 232 Cal.Rptr. 132, 728 P.2d 202 (1986); *People v. Rioz,* 161 Cal.App.3d 905, 207 Cal.Rptr. 903 (1984). Because these decisions are predicated upon that state's unique constitutional provision, they are not persuasive to this Court.

Here, there is no indication that the defendants were prejudiced by having to share an interpreter through one day of their trial. Nothing in the record suggests that they were unable to communicate with their counsel when needed. In fact, the defendants used the joint interpreter at least once to consult with their attorneys during a recess. The trial court made it clear to the interpreter that the court would call a recess if the interpreter needed a break. The defendants have not shown that they were prevented from obtaining a pause in the proceeding if they wished to confer with counsel. Their claim on appeal of a violation of their constitutional rights therefore fails.[5]

## III.

### CONCLUSION

The jury's verdict finding the defendants guilty of conspiracy to traffic in heroin is supported by substantial evidence. While there was an anomaly in the jury instructions and in the jury's special verdict responses regarding the charged offense of conspiracy to traffic in cocaine, it did not prejudice the defendants because the trial court deemed them acquitted on that charge. The defendants' assertion on appeal that the district court should not have instructed the jury on the lesser offense of delivery of cocaine will not be addressed because the defendants did not object to the instruction and, in fact, invited this alleged error. The requirement that the defendants share a single interpreter during the last day of trial did not violate any federal constitutional rights of the defendants or any Idaho statute or court rule. No error having been shown, the judgments of conviction are affirmed.

Judge GUTIERREZ and Judge Pro Tem SCHWARTZMAN concur.

---

**5.** We do not imply that the use of only one interpreter in this circumstance represented the best practice.