862 P.2d 1089

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James P. NASTOFF, Defendant–Appellant.**

**No. 20114.**

Court of Appeals of Idaho.

Oct. 27, 1993.

Randolph E. Farber, Nampa, for appellant.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent.

LANSING, Judge.

By this appeal we are called upon to determine the state of mind or *"mens rea"* necessary to establish criminal culpability for malicious injury to property under I.C. § 18–7001. James P. Nastoff appeals from an order withholding judgment upon a jury's verdict finding him guilty of felony malicious injury to property. He challenges the sufficiency of the evidence to support the verdict, the district court's denial of his motion for acquittal and allegedly improper remarks made by the prosecutor during closing argument. Because we conclude the state did not meet its burden to prove that Nastoff acted "maliciously," as is necessary for conviction under I.C. § 18–7001, we reverse.

This case stems from a five-acre timber fire that burned on state and private land on August 9, 1991, near Paddy Flat Summit in Valley County. In connection with the fire, Nastoff was arrested and charged with one felony, malicious injury to property, I.C. § 18–7001; and three misdemeanors, operation of an engine without adequate protection, I.C. § 38–121; firing timber, I.C. § 18–7004; and destruction of timber on state lands, I.C. § 18–7009. The felony count was tried separately in district court and is the sole focus of this appeal. Following trial on the felony charge, the misdemeanor counts were dismissed on the state's motion.

At the jury trial, the state introduced the following evidence. Nastoff and two associates had been woodcutting in the area two days prior to the fire.[1] During fire suppression efforts, a chain saw was found approximately twenty yards from the asserted origin of the fire. The saw had been pushed for an unknown distance and run over by a bulldozer before the bulldozer operator observed it. The chain saw spark

arrester had been removed, and holes had been punched in the muffler cover. These modifications, which were allegedly in violation of I.C. § 38–121, caused the saw to emit carbon when idling. Nastoff admitted that he owned the saw and had been operating it. He indicated to one witness that he knew of the modifications to the saw, though they had been made before he acquired it. The state's theory at trial was that Nastoff's operation of the saw resulted in emission of carbon, which smoldered for two days before igniting the fire. The value of timber destroyed in the fire was established to be over $1,000. The state did not contend that Nastoff intended to start a fire by his operation of the chain saw.

At the close of the state's case-in-chief, Nastoff made an oral motion for acquittal, asserting lack of evidence on both causation and malice. The motion was denied, and the jury returned a verdict of guilty. Nastoff subsequently submitted a motion for judgment of acquittal under I.C.R. 29(c) and a motion for new trial under I.C.R. 34. The motions were based on alleged insufficiency of the evidence to establish that Nastoff burned the timber "maliciously" under I.C. § 18–7001. The motions were denied and this appeal followed.

This case turns upon interpretation of the word "maliciously" as used in I.C. § 18–7001. That section states in part:

> Malicious injury to property.—Every person who maliciously injures or destroys any real or personal property not his own, in cases otherwise than such as are specified in this code, is guilty of a misdemeanor, unless the damages caused by a violation of this section exceed one thousand dollars ($1,000) in value, in which case such person is guilty of a felony....

By clear terms of this statute, one may be guilty of the proscribed offense only if the injury to property was carried out "maliciously."

---

1. The state does not contend that the woodcutting, itself, was illegal or wrongful.

A definition of "malice" is provided by I.C. § 18–101, which states:

18–101 Definition of terms—The following words have in this code the signification attached to them in this section, unless otherwise apparent from the context:

\*     \*     \*     \*     \*     \*

4. The words "malice," and "maliciously" import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.

Under that definition, malice may take either of two quite distinct forms—it may constitute (1) a purpose or desire to vex, annoy or injure another; or (2) an intent to do a wrongful act, regardless of the presence or absence of any desire to inflict harm on another.

The state does not contend that Nastoff started the fire to vex, annoy or injure another person but, rather, focuses on the second alternative definition of malice—the "intent to do a wrongful act." Consequently, for our analysis, we also consider only that second definition, which defines "maliciously" to be essentially synonymous with "intentionally." Nastoff urges that because the record is devoid of any evidence that he intended to burn the timber, he cannot be convicted of malicious injury to property under that definition.

The state, however, asserts that Nastoff was acting "maliciously" within the meaning of the statute by intentionally operating the chain saw while knowing it was illegally modified. Nastoff intended the "wrongful act" of operating a chain saw in violation of I.C. § 38–121, says the state, and the intent to perform that act constitutes the requisite malice, as defined by I.C. § 18–101(4). Thus, according to the state, the intent to do *any* wrongful act will constitute the "malice" supporting a conviction for malicious injury to property. It need not be an intent to damage property, but may be an intent to do some other

wrongful act that ultimately (even accidentally) results in injury to property. The state finds support for this argument in the fact that the definition of malice in I.C. § 18–101(4) refers to intent to do *a* wrongful act, not *the* wrongful act.

Thus, the issue presented is whether the intent to do a wrongful act that is required to establish malice for purposes of criminal liability under I.C. § 18–7001 must be an intent to injure or destroy property, or whether intent to engage in other wrongful conduct will suffice so long as the conduct ultimately leads to property damage.[2] As the introductory clause of I.C. § 18–101 acknowledges, the definitions given in that section must be utilized with consideration of the contexts within which the defined terms are used in other sections of the penal code. Here, we must apply the I.C. § 18–101(4) definition of "maliciously" in light of the context of its use in I.C. § 18–7001.

██   In construing a statute, it is our objective to ascertain and give effect to the intent of the legislature. *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990); *Greenwade v. Idaho State Tax Commission*, 119 Idaho 501, 505, 808 P.2d 420, 424 (Ct.App.1991). That intent is ascertained, if possible, from a reading of the statute. The plain meaning of a statute will prevail unless the clearly expressed legislative intent is contrary or unless the plain meaning leads to absurd results. *George W. Watkins Family v. Messenger, supra.*

██   Accordingly, to determine the requisite *mens rea* for a violation of I.C. § 18–7001, we begin our analysis with the language of that statute. Section 18–7001 establishes two components for commission of the crime of malicious injury to property—a culpable act or result (injury to the property of another) and a harmful state of mind (malice). The statute states that one is guilty of the offense who "maliciously injures or destroys ... property...." The

---

2. For purposes of our analysis, we assume that the state's evidence sufficiently proved that the

fire was started by Nastoff's chain saw.

use of "maliciously" to modify the verbs "injures or destroys," indicates that the act that must be performed with intent is the injuring or destroying of property. We do not perceive from the plain language of the statute any implication that an intent to do a *different* wrongful act may be engrafted upon the proscribed conduct of damaging property to provide the requisite malice for criminal liability under I.C. § 18–7001. The words of the statute do not imply a legislative intent to create criminal liability under this section where the injury to property was an unintended consequence of conduct that may have violated some other statute. Hence, we conclude by its plain language, I.C. § 18–7001 creates culpability for malicious injury to property only where the defendant's conduct causing the injury is accompanied by an intent to injure property of another.[3]

This conclusion is bolstered by the provisions of I.C. § 18–114 which provides:

In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence.

Section 18–114 appears to be a legislative adoption of a common law rule that guilt of a crime generally requires a concurrence of the requisite mental fault (whether it be intent, knowledge, negligence or some other formulation) with the prohibited act or result. In discussing this doctrine, a leading treatise states:

[W]hat has sometimes been referred to as "transferred intent" is applicable only within the limits of the same crime; A's intent to kill B may suffice as to his causing the death of C, but A's intent to steal from C will not suffice as to his causing the burning of C's property. That is, while a defendant can be convicted when he both has the *mens rea* and commits the *actus reus* required for a given offense, he cannot be convicted if the *mens rea* relates to one crime and the *actus reus* to another. Although the courts have not carefully articulated the reasons why this is so, the basic point is

that a contrary rule would disregard the requirement of an appropriate mental state. The distinctions now drawn between various kinds of crimes in terms of their seriousness, as reflected by the punishments provided for them, would lose much of their significance if an intent to cause any one specific type of harm would suffice for conviction as to any other type of harm which is criminal when intentionally caused.

1 LaFave and Scott, SUBSTANTIVE CRIMINAL LAW, § 3.11 at 385 (1986) (footnote omitted).

■ In *State v. Taylor*, 59 Idaho 724, 738, 87 P.2d 454, 460 (1939), our Supreme Court stated that "intent" as used in I.C. § 18–114 means "not an intent to commit a crime but is merely the intent to knowingly perform the interdicted act...." The "interdicted act" is the act prohibited by statute. For the crime of malicious injury to property under I.C. § 18–7001, the interdicted act is the injury or destruction of any real or personal property not owned by the defendant. Therefore, by terms of I.C. § 18–114, the state was required to prove that Nastoff harbored the intent to knowingly injure real or personal property that he did not own.

If the state's statutory construction were adopted, enabling criminal liability under I.C. § 18–7001 to be predicated upon Nastoff's intentional use of an illegally modified chain saw, without any accompanying intent to cause a fire, then culpability under that statute would be based upon mere negligence. We recognize that Nastoff may have been negligent in operating the saw, and his negligence may have caused the fire. Such negligence might give rise to criminal liability under other statutes, including I.C. §§ 18–7004 and 18–7005 as well as § 38–121, and it might create civil liability for damage to the timber. We cannot conclude, however, that the legislature, in using the term "maliciously," intended to proscribe and punish merely negligent conduct *under I.C. § 18–7001.* If

---

**3.** We intimate no opinion that the intent must be to injure precisely the same property that is in fact injured. *See,* 1 LaFave and Scott, SUB- STANTIVE CRIMINAL LAW, § 3.12(d) at 399–400 (1986).

that were the legislative intent, it is probable that the legislature would have used the words "negligently," "recklessly," or "carelessly" to describe the requisite *mens rea* as it has in other criminal statutes, *e.g.,* I.C. §§ 18–7004, 18–3312 and 18–6001, rather than the term "maliciously," which was used in I.C. § 18–7001. The definition of "malice" in I.C. § 18–101(4) leaves no room for an interpretation of the term to include negligence.

For the foregoing reasons, we hold that Nastoff could not properly be found guilty of violating I.C. § 18–7001 absent evidence that he intended to burn the timber.[4]

■ We must next determine whether evidence at trial is sufficient to support a finding of such intent. A conviction may be sustained only where there is substantial evidence upon which a rational trier of fact can find the defendant guilty of the crime charged beyond a reasonable doubt. *State v. Barlow,* 113 Idaho 573, 746 P.2d 1032 (Ct.App.1987).

■ On appellate review of a conviction, this Court may not substitute its views for those of the jury as to the credibility of the witnesses, the weight of testimony and reasonable inferences to be drawn from the evidence. *State v. Friedley,* 122 Idaho 321, 323, 834 P.2d 323, 325 (Ct.App.1992). When a defendant has been convicted, on appellate review all reasonable inferences are drawn in favor of the prosecution. *State v. O'Campo,* 103 Idaho 62, 67, 644 P.2d 985, 990 (Ct.App.1982). However, where the evidence is insufficient to support a guilty verdict, the conviction must be set aside. *State v. Gissel,* 105 Idaho 287, 292, 668 P.2d 1018, 1023 (Ct. App.1983).

■ After closely examining the record in this case, we find no evidence that Nastoff intended to start a fire or burn timber. We recognize that a jury may infer intent from the commission of acts and surrounding circumstances. *State v. Booton,* 85 Idaho 51, 375 P.2d 536 (1962); *State v.*

*Johnson,* 74 Idaho 269, 261 P.2d 638 (1953). However, the evidence here not only fails to support an inference of malicious intent, but it gives rise to a contrary inference. The prosecution's sole theory at trial was that the fire was kindled by Nastoff's illegally modified chain saw. The saw emitted carbon which, according to the state's witnesses, probably smoldered for two days before igniting the fire. Such evidence is inconsistent with an inference that Nastoff used the chain saw in a deliberate attempt to start a fire.

We conclude there was no substantial evidence upon which the jury could have found beyond a reasonable doubt that Nastoff intentionally started the fire. The state failed to prove the element of malice, as required for conviction under I.C. § 18–7001. Therefore, the trial court erred in denying Nastoff's motion for a judgment of acquittal.

In light of our conclusion that the evidence is insufficient to support a finding of guilt, we need not address Nastoff's allegation of prosecutorial misconduct at trial.

The order withholding judgment is reversed with directions to enter an order of acquittal.

WALTERS, C.J., and PERRY, J., concur.

---

4. We reiterate that proof of malice under the alternative definition given by I.C. § 18–7001, a "wish to vex, annoy, or injure another person," would have also sufficed if supported by facts in evidence, but the state makes no claim that Nastoff harbored such desire or intent.