**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket Nos. 34746/34747/38249**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2013 Opinion No. 37** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: June 14, 2013** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JAMES LEROY SKUNKCAP,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Peter D. McDermott, District Judge.

Judgment of conviction and enhanced unified sentence of twelve years with five years determinate for eluding a police officer, affirmed; judgment of conviction and consecutive enhanced unified sentence of eighteen years with eight years determinate for grand theft, affirmed; judgment of conviction and sentence for three months for misdemeanor assault, affirmed; judgment of conviction for misdemeanor malicious injury to property, vacated.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

James Leroy Skunkcap appeals from the district court's judgments of conviction and sentences.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers observed a man, later identified as Skunkcap, and a woman leave a home (that was under surveillance) in a vehicle reported as stolen. The officers attempted to stop the vehicle. Skunkcap attempted to flee and only stopped after colliding with two police vehicles. In a separate matter, Skunkcap was charged with stealing two saddles out of a horse trailer belonging to a western store. These events resulted in three criminal trials. The first trial,

1

Docket No. 34746, resulted from Skunkcap's collision with the police vehicles. A jury convicted Skunkcap of felony eluding a police officer, Idaho Code § 49-1404(1), (2)(b); malicious injury to property, I.C. § 18-7001; and misdemeanor simple assault, I.C. § 18-902. Following the trial, Skunkcap entered a guilty plea to being a persistent violator. The second trial, Docket No. 34747, involved the theft of two horse saddles and resulted in a jury convicting Skunkcap of grand theft, I.C. §§ 18-2403(1), 18-2407(1). Skunkcap again entered a guilty plea for being a persistent violator.

The district court imposed a unified term of eighteen years with eight years determinate for the felony eluding a police officer conviction, including the persistent violator enhancement. The court imposed a term of six months for misdemeanor malicious injury to property and three months for misdemeanor assault. Skunkcap also received a unified sentence of eighteen years with eight years determinate for his conviction of grand theft with the persistent violator enhancement, to run consecutive to his eluding sentence. Subsequently, Skunkcap sought to withdraw his first guilty plea to being a persistent violator in Docket No. 34746. The district court allowed the guilty plea to be withdrawn and Skunkcap went to trial a third time, Docket No. 38249, where a jury found him to be a persistent violator. The district court then entered a seven-year indeterminate term enhancement to his five-year determinate sentence for the eluding a police officer conviction. Skunkcap filed an Idaho Criminal Rule 35 motion and the district court granted the motion in part. Skunkcap timely appeals.

## II.

## ANALYSIS

On appeal, Skunkcap raises several issues relative to the separate cases. As to the matter involving collision with the police vehicles, Docket No. 34746, Skunkcap claims that: (1) the district court failed to properly respond to a question from the jury; (2) the jury instructions regarding eluding a police officer and assault were improper; and (3) the prosecutor committed misconduct. As to the matter involving the saddles, Docket No. 34747, Skunkcap contends that: (1) the district court failed to adequately inquire as to a conflict of interest; and (2) the prosecutor committed misconduct. As to the matter involving enhancement, Docket No. 38249, Skunkcap asserts that: (1) the district court imposed an illegal sentence; and (2) the district court failed to adequately inquire as to a conflict of interest.

2

**A.** **Docket No. 34746**

    **1.** **Response to a question from the jury**

Skunkcap claims the district court erred by failing to properly instruct the jury in response to the jury's question regarding application of the definition of "malicious." The decision whether or not to give further instructions in response to questions from a jury is at the district court's discretion. I.C.R. 30(c). Therefore, this Court reviews such a decision under an abuse of discretion standard. *State v. Sheahan*, 139 Idaho 267, 282, 77 P.3d 956, 971 (2003). The Court exercises free review over a district court's determination as to whether jury instructions contain a defect, ambiguity, or gap with respect to its statements on the law. *Id. See also State v. Pinkney*, 115 Idaho 1152, 1154, 772 P.2d 1246, 1248 (Ct. App. 1989). In *Pinkney*, this Court outlined a district court's responsibility when responding to jurors' questions:

> In general, it is within the trial court's discretion to determine whether, and the manner in which, to respond to a question posed by the jury during deliberations. I.C.R. 30[(c)]. *See also Dawson v. Olson*, 97 Idaho 274, 543 P.2d 499 (1975). This grant of discretion is premised on the assumption that the instructions as given are clear, direct and proper statements of the law. *Dawson v. Olson*, *supra.* Consequently, if a jury expresses doubt or confusion on a point of law correctly and adequately covered in a given instruction, the trial court in its discretion may explain the given instruction or further instruct the jury but it is under no duty to do so. However, if a jury makes explicit its difficulties with a point of law pertinent to the case, thereby revealing a defect, ambiguity or gap in the instructions, then the trial court has the duty to give such additional instructions on the law as are reasonably necessary to alleviate the jury's doubt or confusion. *Dawson v. Olson*, *supra. See also* I.C. §§ 19-2132(a) and 19-2204 (trial court must instruct the jurors on all matters of law necessary for their information).

*Pinkney*, 115 Idaho at 1154, 772 P.2d at 1248.

In the instant case, the district court provided the jury with an instruction containing the elements of malicious injury to property. The court also provided the jury with an instruction that "[t]he word 'maliciously' means the desire to annoy or injure another or the intent to do a wrongful act." During deliberations, the jury sent the court the following questions, seeking to clarify that instruction:

> Instruction 17, definition of "maliciously," if the act (the second hit of the [first police] vehicle) was done due to an effort to escape is that malicious or does it mean that the damage was the intent, not the escape?
> When committing a wrongful act is any unintentional damage considered malicious?

3

At trial, the State presented the testimony of Detective Collins. He testified that officers had been watching a mobile home where they believed an individual, other than Skunkcap, may be. A vehicle that was parked outside was reported as stolen. Later, Skunkcap and a woman left in the vehicle with Skunkcap driving. Skunkcap pulled onto the road and was traveling at a low rate of speed along the shoulder of the road in the wrong lane of travel. At this point, other officers in the area were alerted and began to move. Detective Collins pulled his unmarked truck onto the road to block the opposite lane of travel. A marked police truck approached and activated its overhead lights. Skunkcap then executed a U-turn and began traveling at 20 to 25 miles per hour toward Collins' vehicle. Skunkcap struck the front bumper of Collins' vehicle. Skunkcap put his vehicle in reverse, striking another officer's vehicle within a few feet and then again went forward, striking Collins' vehicle a second time from within a few feet.

After receiving the note from the jury, the district court conducted a hearing to discuss the issue raised by the jury and the responses suggested. In regard to the definition of "maliciously," the State argued that the court should refer to the definition given. Skunkcap first asserted that the jury was concerned with applying the term "maliciously" to the circumstances of the multiple collisions that occurred. Although the State asserted that the sequence of events should not be considered separately, but as one continuous act, Skunkcap argued that the court should instruct the jury that they could analyze application of the term "maliciously" separately as to each collision.[1] In addition, Skunkcap argued, "With regard to the unintentional conduct or damages, I would argue that it is not malicious if it's unintended conduct and, therefore, that they should be instructed that unless the damage was intended, it wouldn't be malicious."

As to the definition of "maliciously," the court referred the jury to the given instruction. However, the court went on to explain that the jury could separately apply that term to the individual collisions and that if they found none of the collisions were done maliciously they should respond as not guilty but, on the other hand, if they found any but not all collisions to have been done maliciously, to have the foreperson write on the verdict which of the collisions satisfied that requirement. The jury ultimately found Skunkcap guilty of only the second

---

[1]     Skunkcap argued that the evidence showed that, if there was the requisite $1000 worth of damage done to make the act a felony, it was only due to the first collision with Collins' vehicle, otherwise his acts could result in no more than a misdemeanor. Skunkcap had testified that he had not even seen Collins' vehicle upon making the U-turn and then striking that vehicle the first time.

collision with Collins' vehicle. Upon motion by Skunkcap, the district court reduced the conviction to a misdemeanor, finding that the State had failed to prove the requisite $1000 damage caused by the second collision.

On appeal, Skunkcap argues that the district court's response failed to provide the jury with an "adequate and legally correct response to the jurors' question regarding the *mens rea* for malicious injury to property." Skunkcap claims that the district court should have instructed the jury that the malicious element required a demonstration of intent to injure property of another. Without such an instruction, Skunkcap asserts the jury could have convicted him based on his intent to do a wrongful act--fleeing from the police--rather than his intent to damage the police vehicle.

Skunkcap relies on *State v. Nastoff*, 124 Idaho 667, 862 P.2d 1089 (Ct. App. 1993). In *Nastoff*, we were called upon to determine the state of mind or "*mens rea*" necessary to establish criminal culpability for malicious injury to property under I.C. § 18-7001. *Nastoff*, 124 Idaho at 668, 862 P.2d at 1090. In doing so, we analyzed the definition of "malice" from I.C. § 18-101. We stated, "Under that definition, malice may take either of two quite distinct forms--it may constitute: (1) a purpose or desire to vex, annoy or injure another; or (2) an intent to do a wrongful act, regardless of the presence or absence of any desire to inflict harm on another." *Nastoff*, 124 Idaho at 669, 862 P.2d at 1091. In regard to the "intent to do a wrongful act," we noted the contention of the State that the intent to do any wrongful act would constitute the "malice" supporting a conviction for malicious injury to property and the intent to do some other wrongful act that ultimately, even accidentally, resulted in injury to property was sufficient. *Id*. However, we rejected that contention, holding that I.C. § 18-7001 creates culpability for malicious injury to property only where the defendant's conduct causing the injury is accompanied by an intent to injure the property of another. *Id*. at 670, 862 P.2d at 1092.

We recognize that the instruction given in this case mirrors the pattern jury instruction as well as the language of I.C. § 18-101. "However, if a jury makes explicit its difficulties with a point of law pertinent to the case, thereby revealing a defect, ambiguity or gap in the instructions, then the trial court has the duty to give such additional instructions on the law as are reasonably necessary to alleviate the jury's doubt or confusion." *Pinkney*, 115 Idaho at 1154, 772 P.2d at 1248. In this case, the questions of the jury clearly went to the issue of the *mens rea* involved:

5

Instruction 17, definition of "maliciously," if the act (the second hit of the [first police] vehicle) was done due to an effort to escape is that malicious or does it mean that the damage was the intent, not the escape?

When committing a wrongful act is any unintentional damage considered malicious?

In essence, the jury wanted to know the answers to the questions this Court addressed in *Nastoff*. First, the jury wanted to know whether specific intent to cause injury to the property was required. We answered that question in the affirmative in *Nastoff*. Second, the jury wanted to know if a wrongful act which caused injury to property without specific intent to do so would suffice. We answered that question in the negative in *Nastoff*. The jury here was concerned with damage caused by an effort to escape and unintended damage from a wrongful act.

Again, the court instructed that "[t]he word 'maliciously' means the desire to annoy or injure another *or* the intent to do a wrongful act." (Emphasis added.) In light of the holding in *Nastoff* that intent to injure the property of another is required, we question whether the pattern instruction, modeled after the general malice statute, is appropriate in malicious injury to property cases. However, we hold that the question posed by the jury in this case identified an ambiguity in the jury instructions regarding the necessity of specific intent to cause injury to property and that the court should have further instructed the jury that intent to injure the property of another was a required element of the crime.

The jury clearly referenced the second collision with Collins' vehicle, the only collision on which the jury convicted Skunkcap, after being referred again to the instruction defining "maliciously." The question referenced that second collision together with an effort to escape. The second question made general reference to unintended damage from "a" wrongful act. Whatever Skunkcap's intent was in the second collision, we note that the jury also convicted Skunkcap of the act of eluding a police officer relative to the same event. Under the circumstances, the jury may well have convicted Skunkcap, without further instructions from the court, based upon unintended damage caused in an effort to escape, as opposed to damage caused by intent to injure the property of another. Therefore, Skunkcap is entitled to a new trial on this charge.

### 2. Jury instructions

Next, Skunkcap claims that the jury instructions were improper in two instances. First, Skunkcap claims that the jury instruction regarding his felony eluding a police officer charge

6

created an unlawful presumption in the State's favor and relieved the State of its burden of proof. Second, Skunkcap claims that the jury instruction for assault was legally erroneous. Skunkcap did not object to the jury instructions at trial; therefore, he asserts fundamental error to obtain appellate review. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) the error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) the error affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978 (footnote omitted).

When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). We review jury instructions as a whole because an ambiguity in one instruction may be made clear by other instructions, and an instruction that appears incomplete when viewed in isolation may fairly and accurately reflect the law when read together with the remaining instructions. *See State v. Adamcik*, 152 Idaho 445, 472, 272 P.3d 417, 444 (2012); *State v. Enno*, 119 Idaho 392, 405, 807 P.2d 610, 623 (1991); *State v. Ranstrom*, 94 Idaho 348, 352, 487 P.2d 942, 946 (1971).

### a. Eluding a police officer

The jury instruction regarding eluding a police officer read:

> In order for the defendant to be guilty of Fleeing or Attempting to Elude a Peace Officer, the State must prove each of the following:
> 1. On or about the 14th day of November, 2006
> 2. In the county of Bannock, State of Idaho;
> 3. Defendant JAMES LEROY SKUNKCAP, the driver of;
> 4. a Motor Vehicle; to wit: a blue Toyota Camry bearing Idaho license 1BF9120, in the Kraft Rd. and Main St. area;
> 5. Did willfully flee or attempt to elude a pursuing police vehicle;

6. when given a visual or audible signal to bring the vehicle to a stop; and

7. while doing so, causes damage to the property of another or bodily injury to another.

*** It is sufficient proof that a reasonable person who knew or should have known that the visual or audible signal given by a peace officer was intended to bring pursued vehicle to a stop.*

If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty. If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty.

Skunkcap claims that the italicized sentence relieved the State of its constitutional burden of proving all of the elements of the offense, beyond a reasonable doubt, by creating an evidentiary presumption in the State's favor by permitting the jury to convict for the offense if the jurors believed a reasonable person would have known that he or she was being given a signal to stop. A jury instruction that omits an essential element or relieves the State of its burden to establish the essential elements of the crime implicates a due process violation. *State v. Draper*, 151 Idaho 576, 588, 261 P.3d 853, 865 (2011). In this case, however, Skunkcap has failed to demonstrate a jury instruction error. First, Skunkcap asserts that the italicized clause essentially negates the remainder of the elements instruction, relieving the State of its burden. This simply is not so. The clause can only be read to explain paragraph 6 of the elements instruction. As such, the clause is nearly identical to the language in the statute, I.C. § 49-1404(1). Moreover, the clause is nearly identical to the pattern jury instruction. Idaho Criminal Jury Instruction 1032. The elements instruction clearly required the jury to find, beyond a reasonable doubt, that Skunkcap did "willfully flee or attempt to elude." The jury was instructed that "In every crime or public offense there must exist a union or joint operation of act and intent." Nothing in the clause addressed, much less diminished, the State's burden of proving that the eluding or fleeing was willful.

Skunkcap complains that it was the "manner" in which the clause was added--at the end, in italics and with a double asterisk--that somehow turned the statutorily-based clause into a presumption relieving the State of its burden. While it is not clear why the clause is so placed, italicized or preceded by a double asterisk, those facts do not make the clause into anything more than it is, nor statutorily or constitutionally deficient. The clause conveyed that which the State was required to prove, that the signal must be such that a reasonable person would have known that he or she was being signaled to stop. The clause was not, as Skunkcap contends, such that it

8

"implied that it was sufficient proof for the offense *standing alone* that a reasonable person would have known that he or she was being signaled to stop." (Emphasis added.) Skunkcap has failed to demonstrate an error in the instruction that would implicate a due process violation, and thus, no fundamental error exists.

### b. Assault

Skunkcap claims that the assault instruction is legally erroneous for two reasons: (1) the last clause of element number three and element numbers four and five should have been presented together as a single element in order for the jury to understand that all of those elements needed to be found together to convict under that theory; and (2) element numbers six and seven should have been separated by the conjunction "and" instead of "or" because the statute requires a finding of both elements to convict under that theory.[2] The State alleges that because defense counsel submitted this particular instruction, the doctrine of invited error applies. The doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error. *Thomson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009). One may not complain of errors one has consented to or acquiesced in. *Id*. In short, invited errors are not reversible. *Id*. Skunkcap agrees that he submitted the instruction he now challenges. Although Skunkcap relies repeatedly in his briefing on *Draper*,

---

[2] The jury instruction for assault stated:

> In order for the defendant to be guilty of Assault, the state must prove each of the following:
> 1. On or about the 14th day of November, 2006,
> 2. In the state of Idaho
> 3. the defendant, James L. Skunkcap, unlawfully attempted
> 4. with apparent ability
> 5. to commit violent injury to, Bill Collins,
>    or
> 6. intentionally and unlawfully threatened by word or act to do violence to Bill Collins,
>    or
> 7. did some act which created a well-founded fear in the other person that such violence was imminent.
>
> If any of the above has not been proven beyond a reasonable doubt, then you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty.

9

he fails to acknowledge that the Court therein stated: "'Appellant cannot assert as error on appeal the giving of an instruction which he himself requested.' [*State v. Aragon*, 107 Idaho 358, 363, 690 P.2d 293, 298 (1984)] (citing *Henry v. Mississippi*, 379 U.S. 443 (1965); [*Dallenbach*] *v. State*, 562 P.2d 679 (Wyo. 1977))." *Draper*, 151 Idaho 576, 589, 261 P.3d 853, 866 (2011). Skunkcap cannot assert the claimed error on appeal.

### 3. Prosecutorial misconduct

Skunkcap claims that the State committed prosecutorial misconduct. Skunkcap asserts that an officer, testifying for the State, "injected inflammatory testimony that negatively characterized [him]," resulting in "an improper appeal to the passions and prejudices of the jury." Skunkcap did not object to the testimony at trial and, therefore, asserts fundamental error to obtain appellate review.

The police officer, testifying for the State, gave the following testimony:

[STATE]: And how far behind him were you when he crashed into [the detective] for the first time?

[WITNESS]: The initial time he crashed, I was probably still three or four vehicle lengths behind the suspect vehicle.
Once I seen him crash into the vehicle, I go, I'm going to have to make some aggressive action here because this guy doesn't have any regard for my safety, [the detective], or anybody out on the street that day.

Skunkcap claims that the officer's statement that Skunkcap "doesn't have any regard for my safety, [the detective], or anybody out on the street that day," constitutes prosecutorial misconduct. Skunkcap alleges that this testimony characterized him "as an individual who did not care about the safety of the officers or anyone else." He claims that the officer's testimony violated his due process right to a fair trial because the officer's "appeal to the jurors' emotions [was] an improper attempt to induce the jury to convict [him] based upon factors aside from the law or the evidence at trial."

We conclude that this testimony does not rise to the level of fundamental error. First, the officer's testimony, while non-responsive and irrelevant, did not represent an appeal to the passions and prejudices of the jury and, thus, did not implicate a constitutional due process violation. Second, Skunkcap has failed to argue or demonstrate that the decision not to object at trial was not a tactical decision. Third, Skunkcap has failed to demonstrate that the brief

10

comment by the officer in any way affected the outcome of the trial or was other than harmless. The claim of prosecutorial misconduct fails to demonstrate fundamental error.

**B.    Docket No. 34747**

**1.    Conflict of interest**

Skunkcap claims that the district court erred by failing to make a sufficient inquiry into the alleged conflict of interest between Skunkcap and his appointed counsel.    The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."[3]    U.S. CONST. amend. VI.    The amendment has been interpreted to include the right to be represented by conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261, 271 (1981).    In order to ensure that a defendant receives conflict-free counsel, a trial court has an affirmative duty to inquire into a potential conflict whenever it knows or "reasonably should know that a particular conflict may exist." *State v. Lovelace*, 140 Idaho 53, 60, 90 P.3d 278, 285 (2003); *see also Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980).    A trial court's failure to conduct an inquiry, under certain circumstances, will serve as a basis for reversing a defendant's conviction. *Cuyler*, 446 U.S. at 346-47; *Holloway v. Arkansas*, 435 U.S. 475, 488 (1978).

Whether a trial court's failure to adequately inquire into a potential conflict of interest is enough, on its own, to justify reversal depends on whether the defendant objected to the conflict at trial. *See Cuyler*, 446 U.S. at 348; *State v. Severson*, 147 Idaho 694, 703, 215 P.3d 414, 423 (2009).    When a trial court fails to make a proper inquiry, but the defendant did not object to the conflict at trial, the defendant's conviction will be reversed only if he or she can prove that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler*, 446 U.S. at 348; *Severson*, 147 Idaho at 703, 215 P.3d at 423.    The defendant need not, however, show prejudice in order to obtain relief. *Cuyler*, 446 U.S. at 349-50; *Severson*, 147 Idaho at 703, 215 P.3d at 423.    On the other hand, once a defendant raises a timely objection to a conflict, the trial court is constitutionally obligated to determine whether an actual conflict of interest exists. *Severson*, 147 Idaho at 703, 215 P.3d at 423.    A court's failure to make a proper inquiry after a defendant's

---

[3]    The Amendment has been incorporated through the Due Process Clause of the Fourteenth Amendment to apply to the states. *See Powell v. Alabama*, 287 U.S. 45, 73 (1932).    Idaho law also guarantees a criminal defendant's right to counsel. *See* Idaho Const. art. I, § 13; I.C. § 19-852.

11

timely objection will result in the automatic reversal of the defendant's conviction. *See Holloway*, 435 U.S. at 488-89; *Severson*, 147 Idaho at 703, 215 P.3d at 423. Because the trial court's duty to inquire after a defendant makes a timely objection is a separate and distinct obligation, a defendant in such circumstances need not show that an actual conflict adversely affected the lawyer's performance. *See Holloway*, 435 U.S. at 488-90; *Severson*, 147 Idaho at 703, 215 P.3d at 423. The adequacy of a trial court's inquiry is a constitutional issue over which we exercise free review. *Severson*, 147 Idaho at 704, 215 P.3d at 424.

In these cases, Skunkcap had multiple defense attorneys appointed to represent him. In Docket No. 34746, the public defender was appointed to represent Skunkcap. Skunkcap accused the public defender of lying to him and, thereupon, the public defender moved to withdraw. Skunkcap opposed the motion to withdraw, telling the district court "I'm satisfied with . . . what he does, you know." Nonetheless, the district court granted the motion noting that forcing the attorney to continue under the circumstances would not be appropriate. Thereafter, the district court appointed two attorneys, deputy public defenders, who represented Skunkcap through the remainder of that case. These two deputy public defenders also represented Skunkcap in Docket No. 34747 and Docket No. 38249.

Following the verdict in Docket No. 34747, Skunkcap pled guilty to a charge of being a persistent violator. At the conclusion of his plea to the persistent violator charge, the district court asked Skunkcap if he had any complaints or problems with the way his attorneys represented him. In response, Skunkcap complained about his first attorney, who had been allowed to withdraw, contending he had failed to protect his rights, particularly noting his speedy trial rights.[4] The district court reminded Skunkcap that he had opposed the public defender's motion to withdraw, noting that he was "satisfied" with that representation. As to the attorneys who represented him during the trial, Skunkcap's complaint was that there had only been two hours of trial preparation with them. He did not assert any breakdown in the attorney-client relationship with the trial attorneys. The district court again engaged Skunkcap who again brought up his first attorney and added that his present attorneys could not complain about his first attorney because he was their boss. Skunkcap reiterated that he only had two hours trial

---

[4] On appeal, Skunkcap asserts no violation of rights, including speedy trial rights, occurring prior to withdrawal by the public defender.

12

preparation time with the attorneys.  However, the district court noted that it had appeared that his attorneys had done an excellent job during trial.  Skunkcap agreed, stating "Yes, they did."

Skunkcap did not raise a timely objection to any conflict he had with his first counsel.  Although he accused the public defender of lying to him, Skunkcap resisted the motion to withdraw stating that he was satisfied with the representation.  Skunkcap did not raise a timely objection to any conflict he might have had with substitute counsel during the conduct of the trial.  He does not argue that the district court had some reason to know of a conflict and, thus, a duty to inquire.  The complaints registered by Skunkcap came after the verdict and, indeed, at the point after the entry of a guilty plea to the persistent violator charge.  Even then, Skunkcap did not complain of any conflict with his present counsel which might affect that proceeding.  He did not request substitute counsel.  Any duty of inquiry on the part of the district court, under the circumstances, was satisfied.

### 2.      Prosecutorial misconduct

Skunkcap claims that the prosecutor intentionally elicited testimony from an officer that resulted in a violation of his Fifth Amendment right to remain silent.  While questioning a police officer, the following testimony occurred:

[STATE]:        Okay.  And did you interview the defendant?
[WITNESS]:  No, I did not.
[STATE]:        Did you attempt to?
[WITNESS]:  Yes.
. . . .
[STATE]:        And what did you say to him?
[WITNESS]:  I just advised him that we would like to talk with him about the incident that had taken place.  That was about all I got out.
. . . .
[STATE]:        Okay.  And how did you begin or attempt to begin the interview?
[WITNESS]:  Exactly as I explained.  I told him that we would like to talk with him about the incident that had occurred.
[STATE]:        Okay.  And what was his response?
[WITNESS]:  He pretty much started cussing at myself and Detective Thomas.  And at that time Sergeant Lind--
[STATE]:        Do you recall any specifics as to what he said?
[WITNESS]:  I can't quote him exactly.  It was something along the lines of-- "I'm not fucking talking to you guys."
. . . .
[STATE]:        Did the defendant invoke his rights?
[WITNESS]:  More or less.  I didn't get to Mirandize him.
[STATE]:        You never got a chance to read the Miranda warning?

[WITNESS]:  No, sir.
[STATE]:    Okay.  And at any point were you able to interview the defendant?
[WITNESS]:  No.

Subsequently, during the officer's testimony, the district court interrupted the line of questioning and instructed the jury:  "Ladies and gentlemen, people have the right if they want to not talk with the police, and so I don't want you to hold it against Mr. Skunkcap that he wouldn't give a statement."

"The United States Supreme Court has never held that the Fifth Amendment protects against the use of pre-arrest, pre-Miranda silence." *State v. Parton*, 154 Idaho 558, __, 300 P.3d 1046, __ (2013).  *See also Jenkins v. Anderson*, 447 U.S. 231 (1980) (noting that its decision did not consider whether the Fifth Amendment protects pre-arrest silence).  However, the Idaho Supreme Court has stated, "We believe the better rule is that which holds that the defendants' Fifth Amendment right not to have their silence used against them in a court proceeding is applicable pre-arrest and pre-Miranda warnings."  *Parton*, 154 Idaho at __, 300 P.3d at __ (quoting *State v. Moore*, 131 Idaho 814, 820, 965 P.2d 174, 180 (1998)).  When the defendant's silence is used solely for the purpose of implying guilt, the Fifth Amendment right against self-incrimination applies.  *Parton*, 154 Idaho at __, 300 P.3d at __.

The State does not dispute that this testimony was constitutional error and plain on the face of the record.  Therefore, we only need to decide whether the error was harmless.  In analyzing this prong, the defendant has the burden of proving there is a reasonable probability that the constitutional violation affected the outcome.  *Perry*, 150 Idaho at 226, 245 P.3d at 978.  Skunkcap claims that there is a reasonable probability that the error affected the outcome of his trial because:  (1) the repetitive nature of the questioning increased the likelihood that the jury would draw an improper inference; and (2) the evidentiary gaps in the State's case demonstrate that the verdict likely turned on the implied guilt associated with Skunkcap's silence.  As to the first contention, Skunkcap asserts that the prosecutor asked the witness eight questions regarding the invocation of his right to remain silent.  Although the prosecutor asked multiple questions regarding the officer's attempt at interviewing Skunkcap, the prosecutor never argued that Skunkcap's silence was evidence of his guilt.  Additionally, the prosecutor never argued in closing statements that Skunkcap's silence implied his guilt.  Further, the district court orally provided the jury with a curative instruction regarding Skunkcap's right to remain silent.  We

14

presume that the jury followed the district court's instructions.[5] *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996).

As to Skunkcap's second contention, the record demonstrates that unobjectionable evidence overwhelmingly established Skunkcap's guilt. During trial, an eyewitness to the theft testified that she saw a person carry a saddle from the horse trailer to the trunk of a blue sedan. Although the eyewitness initially misidentified Skunkcap in a photographic lineup, the eyewitness ultimately identified him as the perpetrator at subsequent court proceedings. The eyewitness also wrote down the license plate number of the blue sedan and provided it to the police. A surveillance video, admitted at trial, corroborated the eyewitness's testimony and showed a blue sedan backing into a parking space next to the horse trailer. A police officer testified that upon investigation, he learned that the license plate on the blue sedan was stolen from a different vehicle. Later, police found the blue sedan with the stolen license plate, arrested the driver, and identified him as Skunkcap. Further, a friend of Skunkcap's testified that following the theft he saw a saddle in the trunk of the blue sedan Skunkcap was driving. He also testified that Skunkcap wanted to sell the saddle and that he and Skunkcap took the saddle to Skunkcap's sister's house. Based on the unobjectionable evidence presented at trial and the curative instruction provided to the jury, we determine that the outcome of the trial would not have been affected absent the error. Thus, we conclude the error was harmless.

## C.    Docket No. 38249

### 1.    Conflict of interest

Skunkcap alleges that the district court erred in failing to investigate his attorneys' possible conflict of interest when they represented him in Docket No. 38249. Docket No. 38249 arose after Skunkcap withdrew his guilty plea to a persistent violator charge from Docket

---

[5]    Skunkcap claims that the curative instruction was not adequate. First, Skunkcap argues that the district court should have intervened earlier. Second, he argues the instruction was inadequate as a matter of law because it was phrased as the court's preference rather than as a legal instruction. Initially, the questions were directed to the officer's role in the investigation, and although counsel and the court could have intervened earlier in the question, we do not believe that the timing of the court's instruction is of particular import. In addition, Skunkcap's characterization of the court's instruction as a preference is not persuasive. The sua sponte admonition from the court conveyed an instruction of Skunkcap's right not to speak and that it could not be held against him.

No. 34746. In Docket No. 34746, the district court advised Skunkcap of the wrong penalty for pleading guilty to the persistent violator enhancement during arraignment. At the time of arraignment, Skunkcap had not yet been appointed representation. However, after the district court appointed the public defender, the misstatement was never corrected on the record. At the outset of proceedings for Docket No. 38249, Skunkcap's attorneys filed a motion to withdraw, stating, "it's theoretically possible that the Defendant could allege that his attorney should have corrected the misstatement of the law made by the Court." As the attorneys worked in the same office as the previous defense counsel, they asserted that a conflict may exist under that circumstance.

A hearing was held and argument was presented to the district court on the potential conflict of interest. Essentially, it was asserted that, since the court--prior to the appointment of counsel--had incorrectly advised Skunkcap of the penalty, and if it turned out that his initial counsel the public defender had failed to identify the misstatement and correct it, then Skunkcap may be able at a future point to contend that the public defender had been ineffective. As such, counsel suggested that the entirety of the public defender's office, including the deputy public defenders then representing Skunkcap, may be under a conflict. The court denied the motion, finding no disqualifying conflict. At the next hearing, counsel again raised the issue and indicated to the court that Skunkcap would like to address the issue. Skunkcap expressed his concern with his first counsel, the public defender, and other matters upon which he had questions in the case. He stated that his concerns were not "personal" with respect to present counsel, only that his prior attorney is the boss of his present counsel. The district court again denied the motion, noting the rules of professional responsibility required present counsel to solely advocate for Skunkcap and finding that, despite the fact that prior counsel was the chief public defender, nothing in the record suggested that counsel was not acting in Skunkcap's interest or answering in this case to the public defender.

Skunkcap's assertion that the district court's inquiry was inadequate is belied by the record. Contrary to the present claim, there was nothing in the motion, argument of counsel, or statement by Skunkcap that suggested any breakdown in communication with his counsel or other conflict with his counsel which the district court should have probed. The asserted conflict was based on the fact that his counsel worked in the same office as prior counsel. The district court made a proper inquiry into any potential conflict. The district court held a hearing on the

16

motion, listened to and considered the arguments presented, and based on the arguments and the record, concluded that no conflict existed.[6]  Therefore, the district court did not err by failing to adequately inquire regarding a conflict of interest

### 2. Rule 35 motion

Skunkcap filed a Rule 35 motion relative to his sentence in Docket No. 34746 which was enhanced pursuant to the verdict in Docket No. 38249.  Skunkcap claims that the district court failed to resentence him for his felony eluding a police officer conviction.  Pursuant to Rule 35, the district court may correct an illegal sentence at any time.  In an appeal from the denial of a motion under Rule 35 to correct an illegal sentence, the question of whether the sentence imposed is illegal is a question of law freely reviewable by the appellate court.  *State v. Josephson*, 124 Idaho 286, 287, 858 P.2d 825, 826 (Ct. App. 1993); *State v. Rodriguez*, 119 Idaho 895, 897, 811 P.2d 505, 507 (Ct. App. 1991).

In Docket No. 34746, Skunkcap was originally sentenced to a determinate term of five years for his felony eluding a police officer conviction with a persistent violator enhancement that increased the sentence to a unified term of eighteen years with eight years determinate.  Subsequently, Skunkcap withdrew his guilty plea on the persistent violator charge.  Following a jury trial in Docket No. 38249, Skunkcap was found to be a persistent violator.  At a subsequent sentencing hearing, the district court imposed a seven-year indeterminate sentence for the persistent violator conviction, but said that it could not alter the five-year determinate sentence for the underlying eluding conviction.

Skunkcap filed another Rule 35 motion and alleged that the court incorrectly found that it could not alter the underlying sentence for eluding.  The district court granted the motion, in part, finding that "the Court has the ability and will reconsider the original sentence on the charge of Eluding in this matter."  The court then reinstated the original sentence of five years determinate for eluding.

Now on appeal, Skunkcap claims that the district court did not impose a new sentence for the eluding conviction, but instead decided not to disturb the original sentence.  Skunkcap alleges that this was error because the original sentence was void; therefore, Skunkcap claims he no longer has a sentence imposed for his eluding charge and he should thus be resentenced.

---

[6]     Skunkcap does not challenge the district court's determination that no conflict existed, but only whether the district court satisfied the duty to inquire.

However, contrary to Skunkcap's argument, the record demonstrates that the district court did impose a new sentence. During a hearing on the Rule 35 motion, the court stated:

> [T]he Court has sat down and gone through the presentence investigation report again and has reviewed all of those--all of that information that you just provided to me with regard to that . . . but having considered all of that, I think, with regard to the sentence . . . the Court would again impose that same sentence.

Thereafter, the district court granted Skunkcap's Rule 35 motion, in part, and reinstated the original sentence. Based on the foregoing, we conclude that the district court did not impose an illegal sentence, but rather imposed a new sentence that reflected the original sentence. Therefore, contrary to Skunkcap's assertion, the court imposed a five-year indeterminate sentence for the underlying eluding conviction. Thus, the district court did not err in its ruling on Skunkcap's Rule 35 motion.

## III.

## CONCLUSION

The district court's failure to properly instruct the jury in response to its question requires vacating the conviction for misdemeanor malicious injury to property. Otherwise, Skunkcap has failed to demonstrate any reversible error. Accordingly, the district court's judgment of conviction and sentence for misdemeanor malicious injury to property is vacated. The district court's judgments of conviction and sentences, as enhanced, for felony eluding a police officer and grand theft, as well as misdemeanor assault are affirmed.

Judge MELANSON **CONCURS.**

Judge LANSING, **DISSENTING IN PART.**

I concur in all portions of the majority opinion except Section II(A)(2)(a) concerning the jury instruction on the charge of eluding a police officer, I.C. § 49-1404(1). That instruction stated:

> In order for the defendant to be guilty of Fleeing or Attempting to Elude a Peace Officer, the State must prove each of the following:
> 1. On or about the 14th day of November, 2006
> 2. In the county of Bannock, State of Idaho;
> 3. Defendant JAMES LEROY SKUNKCAP, the driver of;
> 4. a Motor Vehicle; to wit: a blue Toyota Camry bearing Idaho license 1BF9120, in the Kraft Rd. and Main St. area;
> 5. Did willfully flee or attempt to elude a pursuing police vehicle;
> 6. when given a visual or audible signal to bring the vehicle to a stop; and

18

7. while doing so, causes damage to the property of another or bodily injury to another.

*\*\* It is sufficient proof that a reasonable person who* [sic] *knew or should have known that the visual or audible signal given by a peace officer was intended to bring pursued vehicle to a stop.*

If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty. If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty.

Because this offense requires that the State prove that the defendant "willfully" fled or attempted to elude a pursuing police vehicle when given a visual or audible signal to stop, the State necessarily is required to show that the defendant had some knowledge that he was being signaled to stop by a law enforcement officer. In my view, the italicized sentence in the instruction may well have misled the jury about the State's burden to prove that element.

The first defect in the italicized sentence is that it is an incomplete sentence and does not express a complete thought because the word "who" was dropped into the middle of the sentence, apparently by mistake. Given that error, it is difficult to guess what the jury may have thought the sentence meant. Assuming, however, that the jury was perceptive enough to recognize that the "who" did not belong in the sentence, it remains problematical because, as Skunkcap argues, it could have been understood by the jury as relieving the State of its burden to prove that Skunkcap actually, willfully attempted to elude the pursuing police vehicle. That is, it may have led the jury to believe that Skunkcap would be guilty of the offense of eluding a police officer even if he was not aware of the officer's signal to stop, if a reasonable person would have been so aware.

As the majority points out, the sentence in question is drawn from Idaho Code § 49-1404(1), which defines the offense of eluding a peace officer. However, within the statutory context, it is very clear that the sentence refers only to the sufficiency of the proof that a visual or audible signal to stop was given by the peace officer. In its entirety, that subsection states:

Any driver of a motor vehicle who wilfully flees or attempts to elude a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor. The signal given by a peace officer may be by emergency lights or siren. The signal given by a peace officer by emergency lights or siren need not conform to the standards for decibel ratings or light visibility specified in section 49-623(3), Idaho Code. It is sufficient proof that a reasonable person knew or should have known that the visual or audible signal given by a peace officer was intended to bring the pursued vehicle to a stop.

19

Within the statute, the sentence in question follows immediately after a sentence explaining that the emergency lights or siren need not conform to decibel ratings or light visibility specified elsewhere in the Idaho Code. In that context, it is unmistakable that the "sufficient proof" sentence refers to the adequacy of the proof that a visual or audible signal was given.

Within the jury instruction, however, that context is not presented. The sentence does not say that it is sufficient proof *of a visual or audible signal* if a reasonable person knew or should have known that the signal given by a police officer was intended to bring the pursued vehicle to a stop. Rather, after listing all seven elements that must be proved by the State, the sentence says, "It is sufficient proof that a reasonable person . . . should have known that the visual or audible signal given by a peace officer was intended to bring pursued vehicle to a stop." Further, the erroneous sentence is actually accentuated in the jury instruction and seemingly elevated in importance as it is preceded by two asterisks and printed in italics. It could well have been understood by a reasonable juror to mean that the State did not have to prove the defendant's actual knowledge of the signal to stop if a reasonable person in those circumstances would have known of it.

The defectiveness of this instruction is illuminated when it is compared to the pattern jury instruction for this offense, I.C.J.I. 1033, where the point is correctly stated as follows: "The signal to stop must be given by emergency lights or siren which a reasonable person knew or should have known was intended to bring the pursued vehicle to a stop."

It cannot be said that this instructional error was harmless in Skunkcap's case, for from the evidence presented a reasonable jury could have concluded that he was not aware of the officer's flashing lights before Skunkcap's vehicle came to a stop. The evidence showed that it was a very short time, a matter of a few seconds, between the point when a police officer activated his overhead lights and Skunkcap collided with Detective Collins' unmarked vehicle. Indeed, the officer who activated his overhead lights testified that he had only activated the lights and had not had time to activate his siren prior to the collision, and Skunkcap testified that he was not aware that he was being followed by a police officer or that an officer had signaled him to stop.

Because of this instructional error, I would vacate Skunkcap's judgment of conviction for eluding a police officer and remand for a new trial on that charge.