IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45266

| STATE OF IDAHO, | ) | |
| --- | --- | --- |
| | ) | Filed: February 19, 2020 |
| Plaintiff-Respondent, | ) | |
| | ) | Karel A. Lehrman, Clerk |
| v. | ) | |
| | ) | |
| CYNTHIA MARIE MUNSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Melissa Moody, District Judge.

Judgment of conviction and sentence for grand theft, vacated and case remanded.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent. Kale D. Gans argued.

_____

GRATTON, Judge

Cynthia Marie Munson appeals from her judgment of conviction and sentence for three counts of grand theft. Munson argues that the district court abused its discretion by making various evidentiary rulings and imposing an unreasonable sentence. For the reasons set forth below, we vacate the conviction and remand.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Munson was a longtime employee, certified public accountant, and the Chief Financial Officer (CFO) for Pioneer Title.[1] In May 2014, an employee, who reported to Munson, noticed

---

[1] Munson was an employee of Pioneer Holding Company which is the parent company for various Pioneer Title companies. For ease of reference, we refer to all of the Pioneer entities as Pioneer Title.

some payroll irregularities relating to Munson in Pioneer Title's deferred compensation reports. After further investigation, the employee informed the Chief Executive Officer (CEO) of Pioneer Title of these irregularities, and Munson was placed on a leave of absence. Thereafter, Pioneer Title launched an internal investigation into the payroll irregularities. The investigator concluded that Munson was misappropriating funds in a variety of ways. After two months of negotiations, Pioneer Title and Munson reached a civil settlement agreement (settlement agreement) in which Pioneer Title agreed to waive any civil claims against Munson. In exchange and without admitting wrongdoing, Munson agreed to resign from her position at Pioneer Title and repay Pioneer Title $1.3 million.

Following the settlement agreement, the State presented the case to a grand jury and Munson was charged by indictment with four counts. In Count I, grand theft (Idaho Code §§ 18-2403(1), -2407(1)(b), -2409), the State alleged that Munson took payroll advances and did not deduct them from her end of the month payroll checks. In Count II, grand theft by deception (I.C. §§ 18-2403(2)(a), -2407(1)(b), -2409), the State alleged Munson failed to pay any portion of her healthcare benefits and failed to contribute to her employer-sponsored 401K. In Count III, grand theft (I.C. §§ 18-2403(1), -2407(1)(b), -2409), the State alleged that Munson wrote discretionary bonus checks to herself in amounts not authorized by Pioneer Title. In Count IV, forgery (I.C. § 18-3601), the State alleged Munson created and/or used a forged signature stamp bearing the CEO's signature to pass checks without the CEO's knowledge or permission.

The parties filed numerous pretrial motions. As relevant to this appeal, Munson filed a motion in limine to prohibit the State from presenting evidence of the settlement agreement under Idaho Rules of Evidence 401 and 408. The State filed a notice of its intent to admit evidence of the agreement under I.R.E. 404(b). Ultimately, and without discussing I.R.E. 401 or I.R.E. 408, the district court granted the State's motion to allow evidence of the settlement agreement under I.R.E. 404(b). Later, the State filed a motion in limine to prohibit Munson from presenting evidence of a polygraph examination that she took which purportedly showed that Munson was being truthful regarding the charges. During a hearing on the motion, the district court orally granted the State's motion, holding that the polygraph evidence was inadmissible but invited Munson to provide the court with supporting authority regarding her position. Thereafter, Munson filed a motion in limine to admit evidence and testimony of the polygraph examination to rebut any evidence or testimony presented by the State to show consciousness of

2

guilt, intent, absence of mistake, motive, or common plan or scheme. The district court characterized Munson's motion as a motion to reconsider the court's prior ruling to exclude evidence of the polygraph and denied the motion. Munson waived her right to a jury trial. After the eleven-day bench trial, the district court found Munson guilty of Counts I, II, and III. Munson was sentenced to an aggregate unified term of twenty years with four years determinate. Munson timely appeals.

## II.

## ANALYSIS

Munson argues that the district court abused its discretion by: (A) allowing the State to admit a computer screenshot of Pioneer Title's electronic payroll file under the business records exception; (B) allowing the State to present evidence of a civil settlement agreement between herself and Pioneer Title; (C) excluding rebuttal evidence of a polygraph examination proffered by Munson; and (D) imposing an unreasonable sentence.

## A.     Admission of the Electronic Payroll Screenshot

Munson argues that the district court erred in allowing the State to present Exhibit 10 which was a computer screenshot of Munson's electronic payroll file. Specifically, Munson contends that State's Exhibit 10 does not fit within the business records exception to the hearsay rule because it is not a business record and is demonstrably untrustworthy. In response, the State argues that (1) Exhibit 10 fits within the business records exception to the hearsay rule; and (2) regardless, any error in admitting Exhibit 10 is harmless.

When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard. *State v. Jones*, 160 Idaho 449, 450, 375 P.3d 279, 280 (2016). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

In this case, both parties agree that Exhibit 10 is hearsay. The question is whether it falls within the business records exception to the rule against hearsay. The business records exception, I.R.E. 803(6), at the time of Munson's trial read as follows:

3

(6) **Records of regularly conducted activity**.  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the opponent shows the source of information or the method or circumstances of preparation indicate lack of trustworthiness . . . .

At trial, the State admitted Exhibit 10 through the testimony of C. Truchot and T. Hedin.[2] Truchot replaced Munson and is Pioneer Title's current Chief Financial Officer.  Hedin was a former employee of Pioneer Title in the human resource and payroll department and reported to Munson for eleven years.  First, the prosecutor questioned Truchot regarding Exhibit 10 as follows:

Q:      Do you recognize State's Exhibit 10?
A:      Yes.
Q:      What is State's Exhibit 10?
A:      It is the--what I refer to as the payroll, the employee's master file in Sage, Accpac.
Q:      So do you recognize it from working with those before as part of your employment?
A:      Yes.
Q:      How do you access that?
A:      You access it through the payroll module.
Q:      So there are safeguards in place to make sure that not just anyone can get into it?
A:      Yes.
Q:      Have you looked at State's Exhibit 10 before?
A:      Yes.
Q:      And does it appear to be accurate to you?
A:      Yes.
Q:      And you're in charge of that payroll module system for Accpac?
A:      Yes.

Further, on cross-examination, Truchot testified that State's Exhibit 10 "is a screenshot right out of the [Pioneer Title's payroll] system" and she knew it was accurate because she had "gone in there and looked in the system, and it looks like that."

Later in the trial, the State questioned Hedin regarding Exhibit 10.  Hedin testified that she became suspicion of discrepancies in Munson's payroll and reported her findings to T.

---

[2]      The State used the screenshot to show that Munson's advances, dental, medical, and 401K deductions had been turned off in 2007 and 2008.

Bundgard (Pioneer Title's CEO). Per Bundgard's request, Hedin went into Pioneer Title's system (the Accpac software) and "print[ed] more check registers for the years prior," and looked at Munson's employee master file. Hedin testified that she was familiar with State's Exhibit 10 because it was a screenshot that she had taken of Munson's employee master file. Hedin explained that the screenshot was true and accurate to the best of her memory, was a depiction of Munson's employee master file, and was "where you go in and put all of the employee's information, as far as their salary, their insurance benefits, sick time, all that good stuff." The State moved to admit Exhibit 10, Munson objected, and the district court sustained the objection. The State continued questioning Hedin as follows:

> Q: So, again, what is State's Exhibit 10?
> A: It's basically the payroll record. That's where you put in the employee's deductions, salary, so forth.
> Q: And it's the record that's kept in the normal course of business at Pioneer when you were there?
> A: Yes, in the payroll system. Um-hmm.
> Q: Is it something that's made at the time and altered at the time[], or was it something that was made recently?
> A: Made at the time? I'm not sure I understand the question.
> Q: So when you look at that, can you tell when--I guess, when are changes? Are changes in there immediate, or do they--
> A: They have a start and an end date. And, really, the only time I used those dates for the employees was for our cafeteria plan, because it ended 11-30 every year. So if someone participated, I wanted to make sure it stopped at the end of November. And if they re-signed up, we would go back in and change that information.
> Q: So, going back to State's Exhibit 10, how are you familiar with that exact screenshot?
> A: Just this exact one--
> Q: Yeah.
> A: --or any employee?
> Q: That exact one.
> A: How am I familiar with it?
> Q: Yes.
> A: I had to pull this up for Tim to take a look at.
> Q: Do you know how things get input on there?
> A: How they get input?
> Q: Like you talked about those end dates. How do those get placed on that screen, on that master--
> A: You physically go in and change those on the computer.
> Q: So, for that one that's in front of you--
> A: Um-hmm
> Q: --Exhibit 10, who would have been doing that?

5

A: I'm guessing Cindy.
Q: Why do you guess Cindy?
A: Well, because she was the only one who had access at the time. I was not doing payroll in 2007.
Q: You could have gone into the system after 2010?
A: I guess.
Q: But did you?
A: I did not, no.
Q: Do you know if you printed this State's Exhibit 10 for Tim?
A: Yes.
Q: How did you do that?
A: You just do it. It's a print screen of the--on the computer.
Q: Has it been changed or altered in any way, that you can tell?
A: No.

Next, Hedin confirmed that not just anyone could access the screen depicted in State's Exhibit 10, only individuals with a password. She explained that "only people who were trained and knowledgeable in the payroll system" had access to it which included herself and Munson. Subsequently, the district court concluded that it would overrule Munson's objection to Exhibit 10.

Based on the testimony at trial, Munson argues that the district court erred in finding that the screenshot fit within the exception because: (1) the prosecutor did not present any evidence regarding when the exhibit was made; (2) it was not kept in the course of a regularly conducted business activity; and (3) the screenshot lacked trustworthiness based on the source of the exhibit and the method and circumstances of its preparation. In response, the State argues that Exhibit 10 was an admissible business record under I.R.E. 803(6).

We conclude that the district court properly admitted State's Exhibit 10 under I.R.E. 803(6). First, contrary to Munson's contention, the prosecutor presented evidence of when the screenshot was taken. Although I.R.E. 803(6) does not require the State to establish when the *copy* of its business record was taken but rather that the record was created or "made at or near the time by, or from information transmitted by, a person with knowledge," Hedin testified that the screenshot of the payroll file was taken in May of 2014. Second, Pioneer Title kept payroll files in its Accpac software for its employees in the regular course of its business as testified to by both Truchot and Hedin. In addition, Munson concedes in her reply brief that

6

"Pioneer Title undoubtedly maintains its electronic payroll file during the course of its regularly conducted business . . . ."[3]

Third, Munson has not shown that the screenshot lacked trustworthiness. On appeal, Munson argues that Hedin printed the screenshot and she was untrustworthy. Munson cites to various areas of the transcript to show Hedin's untrustworthiness. However, Munson directs the Court's attention to portions of the transcript that occurred after the district court had admitted Exhibit 10. The portions she cites are unrelated to the arguments made in regard to Exhibit 10's admissibility. Once the State established that I.R.E. 803(6) applied, it was Munson's obligation under I.R.E. 803(6) to show "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." When Munson objected to the admission of Exhibit 10 below, she did not make such an argument to the district court. As such, this argument is not preserved for appeal. *See State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). Thus, Munson has not shown that the district court abused its discretion in admitting Exhibit 10. Accordingly, the district court did not err in admitting State's Exhibit 10 as a business record. Because we conclude that this evidence was properly admitted, we need not address whether its admission was harmless.

### B.   Admission of the Settlement Agreement

Next, Munson argues that the district court erred in allowing the State to present evidence of the settlement agreement under Idaho Rule of Evidence 408. This Court reviews a decision on a motion in limine for an abuse of discretion. *State v. Richardson*, 156 Idaho 524, 527, 326 P.3d 504, 507 (2014).

Here, Munson filed a motion in limine, and a memorandum in support of her motion, to exclude evidence of the settlement agreement and to prohibit the State from arguing that the

---

[3]    It seems that Munson ultimately takes issue with the fact that Exhibit 10 was a screenshot of the employee master file, the employee master files can be changed, and Pioneer Title did not regularly take screenshots of its employee master files. She argues that Exhibit 10 is not a business record, rather "It is a screenshot of a fully editable electronic form" and "The information contained in the screenshot is not regularly kept anywhere" because once the employee's payroll information is changed "there is no record of the previous information." However, this argument is fundamentally flawed. Idaho Rule of Evidence 803(6) only requires that the records are kept in the ordinary course of business. State's Exhibit 10 is such a record because as a function of running its business, Pioneer Title keeps payroll information on all of its employees. The fact that an employee's payroll information can be updated or changed does not mean that the current information is not a business record.

settlement agreement was an admission of guilt. Munson argued that the evidence was irrelevant under I.R.E. 401 and otherwise inadmissible under I.R.E. 408. Thereafter, the State filed a notice of intent to admit evidence of the settlement agreement under I.R.E. 404(b) to show: (1) "the money was taken without permission"; (2) "the taking was wrongful"; (3) "the defendant is the person who took the money"; (4) the money "was taken from Pioneer Holding"; (5) "the amount of the theft being over $1,000.00"; and (6) "the defendant's knowledge of the theft" because "[w]hen the jury hears that the defendant, a CPA, agreed to repay approximately $1,300,000.00, to the victim after being caught, the jury could then make the logical inference that the defendant knew of the theft." In addition, the State filed an objection to Munson's motion to exclude evidence of the settlement agreement under I.R.E. 408. The district court heard argument on these motions at the initial pretrial hearing, but reserved ruling on the I.R.E. 404(b) and I.R.E. 408 motions.

During the next pretrial hearing, the district court made oral rulings from the bench. The district court's oral rulings did not mention I.R.E. 404(b) or I.R.E. 408. The court did not make clear if it found that (1) I.R.E. 408 applied in criminal proceedings, but the evidence here was not being offered for a reason that was precluded under the rule; or (2) if I.R.E. 408 did not apply in criminal cases at all. Thereafter, the district court issued a written order reflecting the oral rulings from the bench. However, the written order was also unclear. Under the section titled "Evidence of the July 16, 2014 Agreement," while discussing Munson's motion to exclude evidence of the agreement, the order stated that "The Court <u>denied</u> this motion for the reasons set forth below ('State's motion to admit evidence under I.R.E. 404(b) . . .')." One sentence later, while continuing to discuss Munson's motion to prohibit the State from presenting evidence of the agreement, the court wrote, "[t]he Court <u>denied the motion in part and granted it in part</u>." The district court explained that the "prosecution would be permitted to argue the agreement as consciousness of guilt; however, the prosecutor would not be permitted to argue that defendant admitted guilt or wrongdoing as part of the civil agreement because such an argument would misstate the agreement."

Later in the written order, the district court addressed the State's motion to admit evidence of the agreement under I.R.E. 404(b) stating:

> The state moved to admit evidence in its case-in-chief . . . that defendant agreed to repay approximately $1,300,000 to the victim. The Court <u>granted</u> the state's motion. The Court found that there was sufficient evidence from which a

8

fact finder could conclude that the acts occurred and that the evidence was relevant to a disputed issue other than propensity.

> . . . The evidence of the agreement to repay approximately $1,300,000 to the victim is relevant to consciousness of guilt. Consciousness of guilt is not a listed purpose under Idaho Rules of Evidence 404(b); however, the list in that rule of evidence is not an exclusive list. *State v. Sheahan*, 139 Idaho 267, 279, 77 P.3d 956, 968 (2003) . . . .

Ultimately, the district court allowed evidence of the settlement agreement in under I.R.E. 404(b), but did not make clear its application of I.R.E. 408.

On appeal, Munson urges this Court to conclude that I.R.E. 408 applies in criminal proceedings and argues that the district court erred in allowing the State to present evidence of the settlement agreement between Munson and Pioneer Title. In response, the State asks this Court to conclude that I.R.E. 408 does not apply to criminal proceedings and argues that the district court did not err by permitting the State to introduce evidence of the settlement agreement. Thus, if I.R.E. 408 applies, the evidence was erroneously admitted.

### 1. I.R.E. 408's application in criminal cases

The applicability of I.R.E. 408 to criminal proceedings presents an issue of first impression for this Court's consideration. Prior to 2006, Federal Rule of Evidence 408 was identical to the version of I.R.E. 408 in effect at the time of Munson's trial and read as follows:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, [negating] a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. Compromise negotiations encompass mediation.

There is a federal circuit split regarding that version of the rule's applicability to criminal proceedings. The circuit split involves (1) differing interpretations of the language of Rule 408; and (2) differing views on the underlying policy considerations for Rule 408's implementation. *See United States v. Bailey*, 327 F.3d 1131 (10th Cir. 2003) (explaining circuit split).

Relying first on the plain language of the rule, and then on the policy considerations underlying Rule 408, the Second, Sixth, and Seventh Circuits have held that Rule 408 only

applies in civil proceedings and does not preclude the admissibility of such settlements in criminal proceedings. *See United States v. Logan*, 250 F.3d 350 (6th Cir. 2001); *Manko v. United States*, 87 F.3d 50, 54-55 (2d Cir. 1996); *United States v. Prewitt*, 34 F.3d 436 (7th Cir. 1994). Those courts have determined that the "plain language" of the rule, specifically the use of "validity" and "claim," show that the drafters of the rule intended for it to apply solely in a civil context. *Bailey*, 327 F.3d at 1145. The underlying policy considerations of those circuits allowing admission of civil settlements in criminal proceedings is best summarized by the Second Circuit:

> Rule 408 is premised on the idea that encouraging settlement of civil claims justifies excluding otherwise probative evidence from civil lawsuits. However, encouraging settlement does not justify excluding probative and otherwise admissible evidence in criminal prosecutions. The public interest in the disclosure and prosecution of crime is surely greater than the public interest in the settlement of civil disputes. It follows that since nothing in the Rule specifically prohibits receiving in evidence the admissions and statements made at a conference to settle claims of private parties, they are admissible in any criminal proceeding.

*Manko*, 87 F.3d at 54 (quoting *United States v. Gonzalez*, 748 F.2d 74, 78 (2d Cir. 1984)). Other states with identical versions of Rule 408, Washington and Utah, have addressed this issue and agree with the above listed circuits. *See State v. O'Connor*, 119 P.3d 806, 812 (Wash. 2005) and *State v. Mead*, 27 P.3d 1115, 1128 (Utah 2001) (finding the plain language of the rule to be ambiguous, therefore turning to federal cases and finding *Manko* persuasive).

On the other hand, the Fifth, Tenth, Eleventh, and D.C. Circuits, and the State of Hawaii have concluded that Rule 408 applies to both civil and criminal proceedings. *See United States v. Hays*, 872 F.2d 582, 589 (5th Cir. 1989); *Bailey*, 327 F.3d at 1143-44; *United States v. Arias*, 431 F.3d 1327, 1336-38 (11th Cir. 2005); *United States v. Davis*, 596 F.3d 852, 860-61 (D.C. Cir. 2010); *State v. Gano*, 988 P.2d 1153, 1160 (Haw. 1999). Those courts look to the plain language of the rule and concluded that (1) nothing in the rule precludes application in criminal proceedings; and (2) to construe the rule to apply only in civil settings would render the final sentence of the rule unnecessary because "there would be no need to carve out an exception for certain circumstances in criminal cases." *Bailey*, 327 F.3d at 1146. Additionally, those courts turn to F.R.E. 1101(b) which specifies that the rules of evidence apply in "civil cases and proceedings" and "criminal cases and proceedings." Finally, those circuits state their policy concerns if the rule did not apply in criminal cases: "It does not tax the imagination to envision

10

the juror who retires to deliberate with the notion that if the defendants had done nothing wrong, they would not have paid the money back." *Hays*, 872 F.2d at 589; *see also Gano*, 988 P.2d at 1159 (stating "we believe that the potential impact of evidence regarding a civil settlement agreement is even more profound in criminal proceedings than it is in civil proceedings").[4]

We agree with the reasoning articulated by the Fifth, Tenth, Eleventh, and D.C. Circuits, and the State of Hawaii and are convinced by the plain language of the rule that Idaho Rule of Evidence applies in both criminal and civil cases. First, nothing in the rule precludes its application in criminal cases. To the contrary, the final sentence which states, "This rule does not require the exclusion if the evidence is offered for another purpose, such as . . . proving an effort to obstruct a criminal investigation or prosecution" indicates that this rule generally applies to criminal cases. The drafters of the rule would not have carved out an exception allowing use of a settlement agreement to prove obstruction in a criminal case unless the rule otherwise precluded such admission in the criminal context. Moreover, although the State points to the language of the rule and argues that the "rule's text itself suggests that it should only apply to civil proceedings," the terms are not solely applicable in the civil context. To the contrary, the Idaho appellate courts and the Idaho bar, in general, frequently refer to a defendant's guilt in the criminal context as *criminal liability*. *State v. Bishop*, 146 Idaho 804, 813, 203 P.3d 1203, 1212 (2009); *State v. Nastoff*, 124 Idaho 667, 669-70, 862 P.3d 1089, 1091-92 (Ct. App. 1993). Finally at the time of Munson's trial, I.R.E. 101 defined the scope of the Idaho Rules of Evidence as follows: "These rules govern all actions, cases and proceedings in the courts of the State of Idaho and all actions, cases and proceedings to which rules of evidence are applicable, except as hereinafter provided." Because the Idaho Rules of Evidence generally govern all proceedings, I.R.E. 408 applies in criminal cases.

---

[4]     Federal Rule of Evidence 408 was amended in 2006 to allow a party to admit evidence of *conduct* or *statements* that are made during compromise negotiations only "when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigatory, or enforcement authority" (i.e. conduct or statements made during negotiations with the government can be used against a defendant in a criminal trial). F.R.E. 408. It is noteworthy that the current federal rule precludes evidence of the settlement agreement itself in both civil and criminal cases, regardless if the civil negotiation involved a government entity. *See* F.R.E. 408. The 2006 amendment to the federal rule effectively ended the debate on the application of F.R.E. 408 to criminal proceedings.

11

In addition to the plain language of the rule, we find it persuasive that the other Idaho Rules of Evidence in the 400 series generally apply in the criminal context. In this case, the district court allowed the State to present evidence of the settlement agreement under I.R.E. 404(b). However, neither party contests that if I.R.E. 408, the more specific rule, applies in criminal proceedings then it precludes admission of the settlement agreement. *See e.g.*, *Fragnella v. Petrovich*, 153 Idaho 266, 275, 261 P.3d 103, 112 (2012) (finding that a general catch all rule allowing a party to admit evidence of a police report cannot be used to avoid the specific rule that exclusively precludes the use of police reports). Because we conclude that I.R.E. 408 applies in both civil and criminal proceedings, the district court erred in allowing the State to admit evidence of the settlement agreement. Thus, we turn our analysis to harmless error.

### 2.    Harmless error

The State argues that, even if the civil settlement evidence was inadmissible, admission of the evidence was harmless beyond a reasonable doubt. In response, Munson argues that the State cannot meet its burden of showing that the evidence was harmless beyond a reasonable doubt.

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). A defendant appealing from an objected-to, nonconstitutionally based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). In other words, the error is harmless if the Court finds that the result would be the same without the error. *Id*.

Here, the State argues that it presented overwhelming evidence that Munson committed grand theft. The State points to State's Exhibit 10 (which is the computer screenshot of Munson's electronic payroll file that showed that Munson's deductions had been turned off in 2007 and 2008) and to State's Exhibit 6 (which is Munson's payroll register that showed that Munson's deductions were not being taken out of her checks). The State argues that these exhibits show that Munson's payroll advances were not being deducted and she was not paying

12

her portion of the 401K and medical benefits. The State compares Exhibit 6 with State's Exhibit 2 (which is Bundgard's payroll register) and argues that Munson should have noticed that a normal payroll register, like Exhibit 2, displays the deductions and hers did not. In addition, the State points to the fact that Munson was a certified public accountant and the Chief Financial Officer of Pioneer Holding and should have noticed that she was being overpaid month after month.

We agree with the State that the exhibits listed above, the fact that Munson was a CPA, and the amount of money stolen may infer that Munson had the requisite criminal intent to be found guilty of the charges. However, we conclude that admission of the settlement agreement was not harmless. At trial, Munson did not dispute that she received certain payroll advances that were not deducted at the end of the month, as charged in Count I; she did not dispute that she did not contribute to her healthcare benefits and her employer-sponsored 401K, as charged in Count II; and she did not dispute that she received the three bonus checks at issue in Count III. The only question was whether Munson had the requisite criminal intent (i.e. whether Munson's taking was wrongful). *See* I.C. 18-2403(1).

In this case, the district court allowed the State to present evidence of the agreement through direct questioning during its case-in-chief and during closing arguments to show that the settlement agreement was evidence of Munson's consciousness of guilt. As Munson points out in her briefing, Terry Copple, an attorney, testified at trial on behalf of the State regarding the legal services that he provided to Pioneer Title with respect to Munson. Copple was questioned extensively regarding Munson's reaction when she was first confronted by Pioneer Title in relation to the pay irregularities and her instant agreement to repay whatever she was wrongfully paid. In addition, Copple gave a detailed account of the settlement negotiations. This testimony included but was not limited to: (1) the process of negotiating the amount that Munson would repay; (2) the terms that Munson wanted included in the agreement throughout the process; (3) the items that Munson would use to repay; and (4) Munson's emotions throughout the negotiations. In addition, in its written closing argument, the State pointed to the settlement agreement and argued exhaustively that the agreement proved that Munson intended to steal money from Pioneer Title because she would not have paid the money back if she did intend to steal it.

13

Although the State points to evidence outside of the settlement agreement which could infer Munson's criminal intent, the settlement agreement was admitted in error and used explicitly to prove Munson's criminal intent. Munson's criminal intent was the only contested element at trial. Because of that, we cannot say that the result of the trial would have been the same absent admission of the agreement. Accordingly, admission of the settlement agreement was not harmless error. Therefore, we need not address Munson's contention that the district court erred in denying her motion to use the polygraph examination to rebut admission of the settlement agreement. Because we vacate Munson's judgment of conviction as to all counts and remand the case to the district court for a new trial, we need not address whether the district court erred in imposing Munson's sentence.

## III.

## CONCLUSION

The district court did not err in admitting evidence of the electronic payroll file. However, the district court erred in admitting the civil settlement agreement under I.R.E. 408 and the error was not harmless. Therefore, we vacate Munson's judgment of conviction and sentence and remand the case to the district court for a new trial.

Chief Judge HUSKEY and Judge BRAILSFORD **CONCUR**.

14